IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HORNBECK OFFSHORE SERVICES, LLC, et al.** | |
| Plaintiffs, | CIVIL ACTION No.  10-1663(F)(2) |
| v. | SECTION F |
| **KENNETH LEE "KEN" SALAZAR, et al,** | JUDGE FELDMAN |
| Defendants. | MAGISTRATE 2<br>MAGISTRATE WILKINSON |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Federal Defendants ("Defendants") hereby file this Reply in support of their Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, for a Stay of Proceedings.[1]

Given the issuance of a new decision by the Secretary and the rescission of the agency action challenged in their complaint, Plaintiffs cannot reasonably contend that their current allegations have continued vitality.  The Administrative Procedure Act (APA) requires that Plaintiffs challenge a discrete and final agency action, which they purported to do when they challenged the May 28 Directive and its implementing NTL.  Those challenged actions have been rescinded and no longer have any legal effect.  Accordingly, Plaintiffs' challenges to those actions, even if fully litigated, will not affect the management of the Outer Continental Shelf or the legal interests of the parties.

---

[1]  Defendants have moved in the alternative for a stay of proceedings pending the Fifth Circuit's decision on Defendants' motion to vacate the preliminary injunction.  Plaintiffs respond that the motion before the Fifth Circuit lacks merit.  Plfs' Br. at 15-16.  Defendants respectfully submit that the District Court should not, in the context of a motion to stay proceedings, consider the merits of a separate motion to the Fifth Circuit.  Beyond that, Defendants rest on their opening brief in support of the alternative motion to stay.

1

Implicitly recognizing that the July 12 Directive moots their existing claims, Plaintiffs make blanket attacks against that Directive and the Secretary's decision-making process. They describe the July 12 Directive as a "pre-ordained result" based on "post-hoc rationalizations," and argue that it is entitled to no deference. Plfs' Br. at 8-9. They also accuse the Secretary of flouting this Court's orders and "manipulating the legal system" through his Directive. Plfs' Br. at 10. But these improper and unfounded attacks have no bearing on the issue of mootness and should be disregarded.

Plaintiffs' reliance on the two exceptions to the mootness doctrine is also misplaced. In order for either exception to apply, Plaintiffs must show at least some reasonable likelihood that the alleged violation of law – suspension of operations based on the "arbitrary and capricious" May 28 Directive – will recur. No such likelihood exists here. The July 12 Directive rescinded and superseded the May 28 Directive, and Interior has no intention of reinstating the May 28 Directive. Accordingly, "neither party has a legally cognizable interest in the final determination of the underlying questions of law and fact" pertaining to the May 28 Directive, and the case must be dismissed. See Los Angeles County v. Davis, 440 U.S. 625, 631 (1979).

This does not mean Plaintiffs are without recourse. If Plaintiffs believe the July 12 Directive contains some legal flaw, they may challenge its implementation by filing a new complaint, or they may seek leave to amend their complaint in the present case. What they may not do, however, is force this Court and the Defendants to expend their limited time and resources adjudicating the adequacy of an administrative record for an action that no longer has any legal effect. A final determination of whether the May 28 Directive, NTL, and corresponding suspension letters were arbitrary and capricious would amount to an advisory opinion, and would not relieve Plaintiffs from the terms of the July 12 Directive. Plaintiffs' claims, therefore, must be dismissed.

**A. Plaintiffs Improperly Seek to Avoid Mootness by Attacking the July 12 Directive.**

In their response, Plaintiffs repeatedly attack the probity of the Secretary and allege, in various ways, that the July 12 Directive is a disingenuous maneuver to manipulate the judiciary. In effect, they seek to avoid mootness by having the Court summarily reject the July 12 Directive and proceed as if the May 28 Directive were still in effect. These arguments fail.

As an initial matter, Plaintiffs' position is facially disingenuous. After alleging that the Secretary did not provide adequate reasons for issuing the May 28 Directive, they now claim that the Secretary cannot gather more facts, reassess the situation, and thoroughly explain the reasons for a new decision. Under Plaintiffs' theory, the Secretary has only one chance to justify a suspension decision, and any analysis done after that time is improper "post-hoc rationalization." However, as Plaintiffs acknowledged earlier in the proceedings, Defendants have the "right to engage in appropriate fact finding, data analysis and risk assessment followed perhaps by additional agency action . . . ." Dkt. #69-1 at 2. See PPG Indus. v. U.S., 52 F.3d 363, 366 (D.C. Cir. 1995) ("[T]here is no principle of administrative law that restricts an agency from reopening proceedings to take new evidence after the grounds upon which it relied are determined by a reviewing court to be invalid.").[2] The Secretary did exactly that, and his new decision must now be judged, if appropriately challenged, against its Administrative Record. That Record will consist of the entire body of materials the Secretary considered, directly or indirectly, in the course of the new decision-making process. Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs., 448 F. Supp.2d 1, 4 (D.D.C. 2006).

Plaintiffs cannot avoid this result by characterizing the July 12 Directive as a "pre-ordained" decision justified by "post-hoc rationalizations." The Secretary's announcement – that he would undertake a new decision-making process to "eliminate any doubt that a moratorium is needed,

---

[2] See also Monsanto v. Geerton Seed Farms, 130 S. Ct. 2743, 2758 (2010) (recognizing that district court's order setting aside challenged agency action cannot prevent an agency from taking a new action within its statutory authority).

appropriate, and within our authorities," see Plfs' Br. at 5 – does not suggest that the administrative proceedings leading up to the July 12 Directive were "a barren exercise of supplying reasons to support a pre-ordained result." Plfs' Br. at 14 (quoting Food Marketing Institute v. ICC, 587 F.2d 1285 (D.C. Cir. 1978)). That the Secretary was eager to show he had not exceeded his authority in no way undermines the "probity" of the decision-making process that followed. Nor is the decision undermined by the Secretary's stated opinion that some suspension of operations was appropriate. Cf. C & W Fish Co., Inc. v. Fox, Jr., 931 F.2d 1556, 1565 (D.C. Cir. 1991) ("We would eviscerate the proper evolution of policymaking were we to disqualify every administrator who has opinions on the correct course of his agency's future actions."). What matters here – and what would be demonstrated by the Administrative Record in a proper challenge to the July 12 Directive – is that the new decision involved a proper consideration of all relevant factors.

Plaintiffs also attempt to undermine the July 12 Directive by asserting (incorrectly) that it is identical to the May 28 Directive.[3] This argument leads nowhere, in any event, because even the issuance of an identical agency action after reconsideration does not render the subsequent action improper. Bowen v. Hood, 202 F.3d 1211, 1219 (9th Cir. 2000) ("It can hardly be doubted that an agency is free on remand to reach the same result by applying a different rationale."). A reviewing court's task in such circumstances is only to determine whether the new action satisfies the requirements of the APA. See Los Angeles v. Dep't of Transp., 165 F.3d 972, 978 (D.C. Cir. 1999).

---

[3] Like the May 28 directive, the July 12 Directive applies to most deepwater drilling activities and could last through November 30. However, the July 12 directive establishes a process through which BOEM will gather and analyze additional information from the public, experts, stakeholders, and the industry on safety and response issues, which could potentially provide the basis for identifying conditions for resuming certain deepwater drilling activities. In addition, the May 28 Directive proscribed drilling based on specific water depths; the July 12 Directive does not suspend activities based on water depth, but on the basis of the drilling equipment, configurations, and technologies being used.

Finally, Plaintiffs assertion that the July 12 Directive rests on improper *post-hoc* rationalizations is flatly inconsistent with Supreme Court precedent, which instructs district courts to remand vacated decisions so that agencies may supplement their analysis and explanation. See e.g. Florida Power and Light Co. v. NRC, 470 U.S. 729, 744 (1985) ("[I]f the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). The Secretary's decision to conduct additional investigation and analysis in consultation with BOEM, and to provide a more robust explanation for his new decision, is not only sanctioned but encouraged by binding Supreme Court precedent. See id. In sum, the July 12 Directive – which is not subject to this Court's preliminary injunction – is presumptively valid and cannot be prejudged in the context of this Motion to Dismiss.

### B.  Plaintiffs' Opposition Finds No Support in the Doctrine of "Voluntary Cessation."

Plaintiffs cannot avoid mootness by relying on the doctrine of "voluntary cessation." Typically, the "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000). This exception to the mootness doctrine is based on the pragmatic concern that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." City News & Novelty v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001). To address this concern, courts refuse to find mootness on grounds of voluntary cessation unless the party alleging mootness can demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violations." Davis, 440 U.S. at 631; see Laidlaw, 528 U.S. at 189.

The doctrine is not applicable here. The issuance of the July 12 Directive and the implementing suspension letters were not simply cessation of challenged conduct; they are new

5

agency action. Under such circumstances, the challenge to the superseded action and rescinded suspension letters is moot. See, e.g., Princeton Univ. v. Schmid, 455 U.S. 100, 103 (1982) (holding that a challenge to a university regulation was moot where a new regulation had been adopted); Rio Grande Silvery Minnow v. BLM, 601 F.3d 1096, 1111-1112 (10th Cir. 2010) (holding that issuance of a new biological opinion mooted challenge to previous opinions); Schering Corp. v. Shalala, 995 F.2d 1103, 1105-06 (D.C. Cir. 1993) (holding that FDA letter had "no current operative effect" and "cannot govern" future actions, thus claims resting on letter were moot).

Moreover, even if the doctrine were otherwise applicable, it would not defeat mootness in this instance. The doctrine is applied stringently to private litigants seeking to establish mootness through voluntary cessation; it must be "absolutely clear" that the challenged behavior could not reasonably be expected to occur. See Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009) (quoting Laidlaw, 528 U.S. at 189). Government actors, however, face a much lower burden in this context than do private parties. As the Fifth Circuit recently recognized, government parties are entitled to "solicitude" when they assert mootness on grounds of voluntary cessation because "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith. . . ." Sossamon, 560 F.3d at 325; see also McCrary v. Poythress, 638 F.2d 1308, 1310 & n.1 (5th Cir. 1981) (applying presumption that government would not repeat its purportedly unauthorized actions); Troiano v. Supervisor of Elections in Palm Beach County, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur").

Plaintiffs offer no reason to expect that the Secretary might abandon the July 12 Directive in favor of reinstating the May 28 Directive. Accordingly, Plaintiffs have failed to meet their burden of showing under the first prong of the voluntary cessation test that the alleged violation is reasonably likely to recur. See Wright, Miller & Cooper, 13C Fed. Prac. & Proc. Juris. § 3533.7 (3d ed.)

("[S]elf-correction . . . provides a secure foundation for mootness so long as it seems genuine."). Put another way, there is no danger that the Secretary has "evade[d] judicial review, or . . . defeat[ed] a judgment, by <u>temporarily</u> altering questionable behavior." <u>City of Waukesha</u>, 531 U.S. at 284 n.1.

Moreover, the July 12 Directive is not a means to manipulate the legal system, as Plaintiffs assert. The July 12 Directive is the result of a thorough deliberative process designed to increase the safety of drilling operations in the Gulf of Mexico to acceptable levels. As part of that process, BOEM compiled and presented the Secretary with information and analysis concerning, *inter alia*, the current status of drilling safety, the implementation of necessary safety measures, the current status of well control and spill containment capabilities, and the current status of oil spill response capabilities. <u>See</u> Ex A at 7. Based on this information and other considerations detailed in his decision document, the Secretary concluded that a suspension of drilling operations using subsea BOPs and BOPs on floating platforms was appropriate. The Secretary also explained, based on the Administrative Record before him, the various reasons underlying the scope and duration of the suspensions. Far from being a manipulation of the legal system, this is precisely the type of reasoned decision-making this Court has determined is required in making a suspension decision.

Finally, Plaintiffs fail to satisfy the second prong of the voluntary cessation test. The Secretary's decision to rescind the May 28 Directive has completely and irrevocably eradicated the effects of that decision. The May 28 Directive – which Plaintiffs have faulted for lacking sufficient analysis, explanation, and administrative record support – is no longer effective and, accordingly, no operations are or will be suspended pursuant to that Directive. Accordingly, Plaintiffs may not rely on the voluntary cessation exception to preserve this Court's jurisdiction in the instant case.

### C. The Challenged Agency Action is Not Capable of Repetition Yet Evading Review.

"[T]he capable-of-repetition doctrine applies only in exceptional situations." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 109 (1983). This exception applies only where (1) "there [is] a

reasonable expectation that the same complaining party would be subjected to the same action again[,]" and (2) "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Plaintiffs bear the burden of proving both prongs. Libertarian Party v. Dardenne, 595 F.3d 215, 217 (5th Cir. 2010).

Plaintiffs cannot carry their burden under the first prong because there is no reasonable expectation that they will again be impacted by the May 28 Directive. See Libertarian Party, 595 F.3d at 217 (holding that a party attempting to rely on this exception must show more than a "theoretical possibility" that they will be subject to the same allegedly unlawful action). No such expectation exists here because the July 12 Directive and the agency's new suspension letters supersede the May 28 Directive and earlier suspension letters, ensuring that Plaintiffs are not subject to the actions that they claim are illegal. Moreover, Plaintiffs cannot legitimately claim they are subject to "recurring illegality" simply because they believe the July 12 Directive is somehow defective. The July 12 Directive is a new decision that would need to be judged on the merits of its Administrative Record in an appropriate lawsuit. Finally, it is not enough in this context for Plaintiffs to characterize the July 12 Decision as a "reoccurrence" simply because it directs suspensions of apparent similar scope and duration as the May 28 Directive.[4] Plaintiffs must instead show that future suspensions would be based upon the May 28 Directive, which the July 12 Directive ensures will not occur. See Lyons, 461 U.S. at 109 ("[T]he capable-of-repetition doctrine applies . . . generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.") (emphasis added). In sum, Plaintiffs are not reasonably likely to

---

[4] The Plaintiffs' underlying theory of illegality is not that the Secretary lacks authority to issue suspensions, but that he failed to adequately justify the May 28 suspension. Given that type of attack, the alleged illegality would only recur if the Secretary had issued a new suspension based on the same facts and reasoning. To the contrary, the July 12 Directive is based on a separate record and an even more robust explanation that addresses the decision-making concerns raised by this Court in its preliminary injunction order.

be subjected to the same illegality alleged with respect to the May 28 Directive and, therefore, they have failed to carry their burden under the first prong.

Plaintiffs also fail to carry their burden under the second prong. Even if this Court were to accept Plaintiffs' characterization of the July 12 Directive as a "reoccurrence" of the May 28 Directive, Plaintiffs still cannot show that Interior's new decision will "evade review." Another party has already challenged the July 12 Directive in this Court, Ensco Offshore Co., Case No. 2:10-cv-01941-MLCF-JCW. Plaintiffs also could seek to challenge the implementation of that Directive by filing a new complaint or by seeking leave to amend their complaint in the instant case.

Finally, Plaintiffs argue that review of the new decision would be ineffective because the Secretary could simply "manipulat[e] the legal system by issuing other, similar orders in succession to moot out any future judicial rulings with which he is dissatisfied," Plfs' Br. at 10, but this argument is specious. As with all federal officials, the Secretary is entitled to a presumption of regularity – not the other way around. United States v. Chem. Found., 272 U.S. 1, 14-15 (1926) ("[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties."). Thus, mere speculation that Interior may seek to "manipulate the legal system" cannot carry Plaintiffs' burden here. See F.C.C. v. Pottsville Broadcasting Co., 309 U.S. 134, 146 (1940) ("It is always easy to conjure up extreme and even oppressive possibilities in the exertion of authority. But courts are not charged with general guardianship against all potential mischief in the complicated tasks of government.").

* * * * *

In sum, Plaintiffs cannot rely on the voluntary cessation or the capable-of-repetition exceptions to the mootness doctrine, and for good reason. Even if the Court were to decide on summary judgment that the May 28 Directive is arbitrary and capricious for the reasons it has already articulated, that decision would not relieve Plaintiffs from the terms of the July 12 Directive – which

is based on separate record from the May 28 Directive, provides an even more robust explanation for the decision, and is presumptively valid and not subject to this Court's preliminary injunction. Accordingly, there is nothing this Court may conclude in adjudicating the May 28 Directive that would afford Plaintiffs the "lasting relief" they seek or, indeed, any relief at all. See Plfs' Br. at 11. The case, therefore, must be dismissed. See Spencer v. Kemna, 523 U.S. 1, 18 (1998) ("[Federal courts] are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong").

## CONCLUSION

Defendants respectfully request that this Court grant this Motion to Dismiss.

Respectfully submitted this 28th day of July, 2010.

IGNACIA S. MORENO
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

/s/ *Guillermo A. Montero*
GUILLERMO A. MONTERO (T.A.)         PETER MANSFIELD
BRIAN COLLINS                       Assistant United States Attorney
KRISTOFOR SWANSON                   Eastern District of Louisiana
Natural Resources Section           Hale Boggs Federal Building
PO Box 663                          500 Poydras Street, Suite B-210
Washington, DC 20016                New Orleans, Louisiana 70130
Tel: (202)305-0443                  Tel: (504)680-3000

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2010, I caused a copy of the foregoing to be served through the Court's CM/ECF System to all parties.

/s/Guillermo A. Montero
Guillermo A. Montero