UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HORNBECK OFFSHORE SERVICES, L.L.C ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-1663 |
| KENNETH LEE "KEN" SALAZAR ET AL. | SECTION "F" |

## ORDER & REASONS

Before the Court is the defendants' motion to dismiss, or alternatively, for a stay. For the following reasons, the motion is DENIED without prejudice.

## **Background**

The facts of this case are by now well known. The Deepwater Horizon drilling platform exploded on April 20, 2010, resulting in loss of life, and injuries, and an oil spill that assaulted the Gulf of Mexico for months. British Petroleum was the leaseholder. On May 28, 2010 in a memorandum to the Mineral Management Services (since resurrected in a new form, after criticism for mismanagement, as the Bureau of Ocean Energy Management, Regulation and Enforcement), the United States Secretary of the Interior issued a six-month moratorium on all offshore deepwater drilling operations. In accordance with the Secretary's edict, the agency issued a Notice to Lessees implementing the moratorium and defining "deepwater" as depths greater than 500 feet. The plaintiffs, who

provide a variety of support services to the offshore oil and gas industry, challenged the first moratorium.

On June 22, 2010, this Court granted the plaintiffs' motion for preliminary injunction and ordered the Administration not to enforce the moratorium. In that Order, this Court found that the plaintiffs had established a likelihood of successfully showing that the Secretary's decision to issue a six-month blanket moratorium against all companies involved in deepwater drilling in the Gulf of Mexico was arbitrary and capricious. The Administration appealed the Order and moved to stay the preliminary injunction pending appeal. On July 8, 2010, the Fifth Circuit U.S. Court of Appeals rejected that appeal over one dissent. Four days later, on July 12, 2010, the Interior Secretary issued a twenty-two page decision memorandum rescinding his May 28 edict and directing the BOEM to withdraw the "suspension" letters issued under it, but ordering it to issue new blanket suspensions based on the second moratorium. This new moratorium purports to apply to all rigs that use subsea blowout preventers or surface blowout preventers on a floating facility and applies through November 30, 2010. In reality, the new moratorium covers precisely the same rigs and precisely the same deepwater drilling in the Gulf of Mexico as did the first moratorium.

The defendants now submit that the plaintiffs' complaint must be dismissed as moot because the challenged agency decision, the

first moratorium, has been revoked and superseded by a new, second moratorium. The defendants argue mootness because they contend there is no effective relief that this Court can grant, and that plaintiffs cannot demonstrate the existence of a case or controversy. They point out that, in the face of the second moratorium, the May 28 moratorium is without effect, and a Court order requiring the withdrawal of the moratorium would be superfluous. In anticipation of the arguments that resist mootness, the defendants add that the exceptions to mootness are inapplicable here. They submit that the voluntary cessation exception does not apply because the Secretary's new decision is a product of agency decision-making, and it is not a mere temporary cessation of the previously challenged conduct. They insist that the federal government is entitled to solicitude when it asserts mootness on the ground of voluntary cessation because the government is presumed to act with good faith. Defendants deny that the new moratorium is a device to manipulate the legal system; rather, they urge, it was issued after the Secretary's consideration of what is claimed to be new information, in a new administrative record. Defendants add that the capable of repetition yet evading review exception also does not apply because there is no reasonable expectation that plaintiffs will again be impacted by the May 28

3

moratorium.¹ Characterizing the new moratorium as a recurrence just because its effects are similar (indeed, the same) is not enough, they argue, pointing out that the legality of the July 12 moratorium must be judged on its separate administrative record and that the May 28 moratorium is no longer causing any harm to the plaintiffs.

Defendants insist that to the extent the plaintiffs wish to challenge the new edict, their exclusive resource is to amend their complaint, or file a new one. (Or intervene in the lawsuit that challenges the new moratorium.) The defendants add that this Court should stay its orders until the Fifth Circuit can rule on the motion to vacate the preliminary injunction.²

The plaintiffs counter that this lawsuit has not been mooted by the Secretary's issuance of a new, second moratorium. The new moratorium, the plaintiffs point out, makes only superficial changes to the first moratorium by referring to the type of blowout preventer used rather than the depth drilled. They respond that the new moratorium applies to all the same thirty-three rigs as before; that it covers all deepwater drilling in the Gulf of Mexico as before; that instead of six months, the new moratorium expires on

---

[1] A vague concession that the first moratorium was unlawful.

[2] After a hearing on this mootness issue, the Court requested post-hearing briefing, which was expanded by a limited remand issued by the U.S. Court of Appeals for the Fifth Circuit.

November 30, 2010, which was the same date the first moratorium was set to expire, as before. The plaintiffs underscore that the "capable of repetition, yet evading review" exception to mootness applies to this case. They point out that the challenged action regarding the first moratorium was unable to be litigated fully prior to its cessation as evidenced by the new decision issued only twenty days after this Court's injunction. They add that there is more than a reasonable expectation that the same controversy will recur; that there is a demonstrated and reasonable probability of recurrence of harm because the Secretary has already issued a new moratorium that causes the same injury to the same plaintiffs: a new moratorium that is the functional equivalent of the first one (which might or might not be in compliance with the APA; an issue not now before this Court).[3]

The plaintiffs also urge that the Secretary's voluntary cessation of his alleged illegal conduct cannot serve to moot the case. A case only becomes moot, they note, if, as here they argue, subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur.

After oral argument on the government's motion to dismiss,

---

[3] The record is clear, however. Immediately after this Court's first injunction order, the Secretary announced in public his determination to issue a new moratorium even before the consideration of any new information. Shortly thereafter, the Secretary publicly reiterated his intention and resolve in congressional testimony.

this Court ordered supplemental briefing on the Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida case and a comparison of what new information was used to support the July 12 directive that was not available before May 28. The Fifth Circuit, simultaneously considering the defendants' motion to vacate this Court's preliminary injunction on the grounds of mootness, issued a limited remand, again, over a dissent. This Court amended its supplemental briefing order to require the parties to address the Fifth Circuit's questions.[4]

---

[4] The Fifth Circuit asked this Court to provide its findings of fact and conclusions of law on the following questions:

> 1. Whether the Secretary has the authority under the provisions of the Outer Continental Shelf Lands Act and the Administrative Procedures Act to declare the provisions of the May 28 Moratorium to be withdrawn, cancelled, and no longer in force and effect, especially given that the May 28 Moratorium is the subject of a preliminary injunction issued by the district court and an appeal filed by the Secretary under the provisions of 28 U.S.C. 1292(a)(1).
>
> 2. Whether the evidence upon which the Secretary relied in issuing the July 12 Moratorium and not asserted in the May 28 Moratorium was available or unavailable to the Secretary when the May 28 Moratorium was issued, and the nature of such additional evidence.
>
> 3. With respect to the scope and substance of the May 28 Moratorium and the July 12 Moratorium, what are the differences, if any, and, considering such differences and any other circumstances--including changed conditions, changed facts, and changed positions or subsequent conduct of the parties--whether the preliminary injunction of the May 28 Moratorium was mooted by the issuance of the July 12 Moratorium.

## **Law and Analysis**

### I.

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). "Standing, as 'an essential and unchanging part of the case-or-controversy requirement of Article III,' determines the courts' 'fundamental power even to hear the suit.'" Grant ex rel Family Eldercare v. Gilbert, 324 F.3d 383, 386 (5th Cir. 2003). To establish standing, the plaintiff bears the burden of showing he has sustained an injury in fact, that there is a causal connection between that injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

In a Rule 12(b)(1) motion, the Court "is empowered to consider matters of fact which may be in dispute," but the motion should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). In determining whether jurisdiction exists, the

Court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986). In a factual attack, the defendants submit evidence in support of their motion and the plaintiffs must prove by a preponderance of the evidence that the Court has subject matter jurisdiction. Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). In weighing the evidence, the Court attaches no presumption of truthfulness to the plaintiff's allegations. Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

II.

The Fifth Circuit asked whether the Secretary had the authority to declare the provisions of the May 28 moratorium be rescinded. If the first moratorium was improperly rescinded, the mootness issue is irrelevant. Both parties agree, however, nothing in OCSLA limits the Secretary's institutional authority to reconsider his decisions. See Macktal v. Chao, 286 F.3d 822, 825-26 (5th Cir. 2002) ("[I]t is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions."). But in a recent case, the Fifth Circuit explained that:

> An agency's inherent authority to reconsider its decisions is not without limits, however. "An agency may not reconsider its own decisions if to do so would be arbitrary, capricious, or an abuse of discretion."

> Furthermore, reconsideration also must occur within a reasonable time after the decision being reconsidered was made, and notice of the agency's intent to reconsider must be given to the parties.

ConocoPhillips Co. v. E.P.A., No. 06-60662, 2010 WL 2880144, at *8 (July 23, 2010) (footnotes omitted). In ConocoPhillips, the Fifth Circuit considered a motion to remand the challenged rule to the agency for reconsideration. Id. That has not occurred here.

Here, the plaintiffs argue that the Secretary's rescission of the first moratorium was arbitrary, capricious, and an abuse of discretion because the proper procedure when an agency seeks to reconsider a decision that is under judicial review is for the agency to move the court to remand. See Anchor Line Ltd. V. Fed. Mar. Comm'n, 299 F.2d 124, 125 (D.C. Cir. 1962) ("[W]hen an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency."). The plaintiffs rely on Doctors, Nursing & Rehab. Center v. Sebelius where the Seventh Circuit declared:

> the agency does not have the unilateral authority to reopen its administrative proceedings once judicial review of the agency's final decision has begun. Rather, the agency may, at any point prior to filing its answer and with a showing of "good cause," move the district court to remand the case to the agency for further proceedings.

No. 09-2226, 2010 WL 2788564, at *7 (7th Cir. July 16, 2010). However, this holding was limited to actions filed under 42 U.S.C. §405(g), the statute that provides for judicial review of a Social Security Administration decision and specifically provides that the

SSA can reopen its proceedings by filing a motion to remand with the court. Id. at *3.

Nonetheless, the general rule that an agency decision that is under judicial review should not be reconsidered until the agency moves for remand, or for the court to hold the case in abeyance, remains sound. See Anchor Line, 299 F.2d at 125. Although it involved a challenge to an adverse decision on a Medicare claim by the SSA, Sebelius presents an interesting parallel to the present case. See id. at *2. While the judicial proceedings were pending, the SSA determined that the plaintiff's Medicare claim was entitled to additional process and so it reopened the administrative proceedings and moved the district court to dismiss the case for lack of subject matter jurisdiction, arguing that there was no longer a final agency decision for it to review. Id. The district court dismissed the case, but because the agency had failed to move to remand, the Seventh Circuit reversed. Id. at *7.

Although the Secretary has general authority to rescind and reconsider the May 28 moratorium, because that moratorium was subject to judicial review the Secretary should have sought a remand or stay before reopening its proceedings. Like the Seventh Circuit in Sebelius, this Court is concerned that if agencies are not required to move to remand, they may use rescission and reissuance of their decisions as a way to manipulate the federal jurisdiction of U.S. courts. This Court is inclined to find that

10

despite the Secretary's general authority to rescind the moratorium, without requesting a remand or stay the Secretary could not effectively rescind that moratorium and issue a new one. But unlike in <u>Sibelius</u>, there is no statutory remand procedure that can be turned to for support. <u>Sibelius</u> aside, the plaintiffs present no authority, and the Court has found none, to hold that an agency reconsideration and rescission of a decision under judicial review, without a remand, is invalid. The plaintiff's "arbitrary and capricious" argument is creative, but unavailing. Although the Secretary failed to follow the proper procedure, there is simply insufficient support for holding that the rescission was without some administrative force. The doctrine of mootness, therefore, becomes pivotal.

III.

"A case becomes moot if (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." <u>Tex. Office of Pub. Util. Counsel v. Fed. Commc'ns Comm'n</u>, 183 F.3d 393, 413-14 (5th Cir. 1999). The United States Supreme Court has held that "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated," it is no longer possible for the Court to grant any effectual relief to the prevailing party and "any opinion as to the legality of the action would be advisory." <u>City of Erie v.</u>

Pap's A.M., 529 U.S. 277, 287 (2000)(internal quotation marks and citations omitted).

Two exceptions to mootness exist. Sossamon v. Lone Star State of Tex., 560 F.3d 316, 324 (5th Cir. 2009).

A.

Under the "voluntary cessation" exception, a federal court is not deprived of its power to determine the legality of a challenged practice by the defendant's voluntary cessation of that practice. Id. at 325. This exception cannot be slighted. To underscore, where the defendant's *voluntary* conduct is at issue, a case can only be found moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000)). This cardinal test has several touchstones, one being deference . . . when called for: at times "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude." Id. ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."). The Fifth Circuit has observed that absent "evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." Id. ; see Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th

Cir. 1988) ("[S]uch self-correction [by a government defendant] provides a secure foundation for a dismissal based on mootness so long as it appears genuine."). Whether the second moratorium is an example of "self-correction" must await later determination.[5]

Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida deserves emphasis. There, the Supreme Court applied the voluntary cessation exception; the city had repealed the challenged minority business set-aside ordinance after the Supreme Court granted certiorari, but replaced it with a new one. 508 U.S. 656, 660, 662 (1993). Although the new ordinance differed in some respects from the original one, the Supreme Court determined that the changes were insignificant and that the new ordinance disadvantaged the plaintiffs in the same fundamental way as the superseded ordinance did. Id. at 662. The High Court underscored that "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has

---

[5] In Sossaman, the Fifth Circuit considered a prisoner's constitutional challenge to the prison's cell-restriction policy under which prisoners on cell restriction were forbidden from attending religious worship services. 560 F.3d at 321. Applying a "lighter burden" to the government's voluntary action, the Fifth Circuit held that an affidavit by the director of the Texas Department of Corrections swearing that Texas had ended the challenged cell-restriction policy was sufficient to show that the restriction was not reasonably expected to recur. Id. at 325. But in Sossaman, the government yielded to plaintiff's complaints. Id. at 324-25. Sossaman provides little guidance here. The government has yielded nothing. And the government still snubs the State of Louisiana's concerns about the widespread harm caused by the first moratorium (without a rational basis in the administrative record for doing so).

13

already done so." Id. Thus, the Court held that the case was not moot. Id. at 663. Justice Thomas authored the majority opinion.

Similarly, in Conservation Law Foundation v. Evans, the First Circuit U.S. Court of Appeals considered the voluntary cessation exception in a challenge to a National Marine Fisheries Service regulation adjusting certain restrictions on sea scallop fishing. 360 F.3d 21, 23 (1st Cir. 2004). The district court had ruled that the NMFS had not violated the procedural requirements of its enabling act and had not acted arbitrarily and capriciously, but while the case was on appeal, the NMFS issued a new, superseding regulation. Id. at 24. In response to the government's argument that the case was moot because the original regulation had been superseded, the First Circuit recognized the "heavy burden" of the voluntary cessation exception. Id. at 25. The court of appeals believed that the new regulation was simply an extension of the original regulation. Id. It concluded that "where a challenged regulation continues to the extent that it is only superficially altered by a subsequent regulation, we are capable of meaningful review." Id. at 26. This Court stresses that although this rationale is instructive regarding mootness and the thrust of the voluntary cessation exception, the Court expresses no opinion here about the new moratorium. The new moratorium has been separately challenged in a separately pending case before this Court.

The next exception, the "capable of repetition, yet evading

review" exception to mootness applies where: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and 2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. Murphy v. Hunt, 455 U.S. 478, 482 (1982). This exception seems to blur into the first. Like the voluntary cessation exception, courts reject mootness (even though the plaintiff might not be presently suffering an injury caused by the defendant) because the same injury may be expected to recur. See id. at 483; Moore v. Hosemann, 591 F.3d 741, 744 (5th Cir. 2009). But instead of the defendant's voluntary conduct, this exception is triggered by the short duration of the challenged action.[6]

B.

The government insists that this case is moot because the plaintiffs have only challenged the May 28 moratorium and that directive has been rescinded and lacks any present legal effect. But, as has been explained, a defendant's voluntary action cannot serve to moot a case unless it is clear that the allegedly wrongful behavior could not reasonably be expected to recur. Sossamon, 560

---

[6]Indeed, the paradigmatic case falling under this exception involves a challenge to an election law that can not be fully litigated before a particular election has passed. Moore, 591 F.3d at 744; Center for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006). Here also the time to challenge the first moratorium has been notably limited, but this Court finds the voluntary cessation exception has greater vigor and more forceful application to this case.

F.3d at 325. This is not a case like Sossaman, where the government yielded to the challenge and ended the challenged policy. In this case, the defendants have issued a new moratorium, a moratorium that is substantially the same as the first one, but the government claims that a rational relationship exists to facts found in a new administrative record.[7]

In response to this Court's briefing order and the Fifth Circuit's limited remand questions, the parties pit themselves in a challenge about just how new this new administrative record is. The defendants plead that 618 new documents and over 6000 pages were created after May 28 and used in the decision-making process for the July 12 directive. But the plaintiffs impressively counter that these pages only make up twenty-two percent of the entire July 12 administrative record, quite possibly even less. The plaintiffs also demonstrate that nearly every statement in the July 12 decision memorandum is anticipated by documents in the May 28 record, or by documents that were otherwise available to the Secretary before May 28. Of course, only documents actually considered by the agency are part of the administrative record. While the July 12 administrative record includes some new data,

---

[7]Whether or not the Secretary of the Interior has succeeded in meeting the requirements of the APA is a question that has not been raised in this complaint. Another group of offshore service companies have, in fact, challenged the new moratorium in their amended complaint before this Court in civil action 10-1941. The validity of the new moratorium will be taken up separately by this Court.

16

plaintiffs arguments are more telling and persuasive.[8]

Further, in elaborating on the scope and substance of the new moratorium versus the old one, the plaintiffs make the point that the two are mirror images of each other and are identical in both scope and substance: the new moratorium applies to the exact same rigs, to the exact same deepwater drilling, for the exact same time period. Indeed, the defendants only weakly disagree. Instead, they focus on the scope and substance of the second decision-making process. They correctly point out that the plaintiffs' complaint challenges the decision-making process leading up to the May 28 moratorium, and they argue that because the July 12 moratorium is based on new information it cannot possibly be considered an identical decision.

The Court cannot now consider whether the new moratorium amounts to a violation of the Secretary's APA statutory authority. The question now before the Court is whether it is clear that the arbitrary and capricious decision-making challenged by the plaintiffs in the context of the first moratorium could or could not reasonably be expected to recur; whether mootness is trumped here by an exception. The burden of showing this with clarity rests

---

[8]The Court draws attention to the fact that the government's post-hearing "Index" and Exhibit 1 submissions continue to be specific only to the Deepwater Horizon tragedy, and remain strategically silent and unspecific, and elusive, to any other deepwater drilling operator in the Gulf.

with the government. The Court finds no way on this record to accord the defendants the solicitude they claim they deserve when only hours after this Court enjoined the enforcement of the first moratorium, the Secretary stated publicly on more than one occasion his resolve to soon issue a new moratorium. When faced with losing its motion to stay pending appeal before the Fifth Circuit, the government plainly admitted that a related moratorium was going to be imposed. And indeed, four days after that motion was denied, the Secretary issued the successor moratorium. It is difficult to square such public expressions of resoluteness, with the government's assertion that its rescission of the first moratorium and its issuance of a new moratorium is entitled to solicitude and should not be considered litigation posturing.

In the cases considering the voluntary cessation exception, the courts were concerned with whether the superseding rule was substantially similar to the challenged one. See City of Jacksonville, 508 U.S. at 662; Conservation Law Found., 360 F.3d at 26; see also Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1111 (10th Cir. 2010) (noting that the plaintiffs response to a mootness challenge had not asserted that the superseding agency action presented only "superficial changes" to the challenged action). At this juncture, the Court cannot say that the second moratorium differs substantially from the first moratorium so as to trump the recurrence issue. Even holding the

18

government to a "lighter burden" and without prejudging the validity of the second moratorium, the Court is compelled to say that it remains beyond mere speculation whether the challenged conduct can be reasonably expected to recur (or has already recurred).

Because this Court has determined that the process leading to the first moratorium lacks probity; because this Court has determined that no rational nexus exists between the fact of the tragic Deepwater Horizon blowout and placing an attainder of universal culpability on every other deepwater rig operator in the Gulf of Mexico; because this Court has determined that the first moratorium is invalid in law; and because the Interior Secretary's second moratorium arguably fashions no substantial changes from the first moratorium, the government has failed to circumvent the voluntary cessation exception to mootness.[9]

Accordingly, the defendants' motion to dismiss, or alternatively for a stay, is DENIED without prejudice.[10]

---

[9] The defendants argued that this Court should stay the case pending the Fifth Circuit's resolution of their motion to vacate the preliminary injunction on grounds of mootness. After considering that motion, on August 16, 2010, the Fifth Circuit remanded the case to this Court for findings of fact and conclusions of law on three questions that were considered in conjunction with the Court's resolution of this motion. The Court does not find that a stay of the case is necessary or appropriate at this time.

[10] As to the validity of the new moratorium, the Court expresses no opinion. The government suggests that its validity or

New Orleans, Louisiana, September 1, 2010.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

invalidity cannot be addressed by a motion to enforce the preliminary injunction. See Fund for Animals v. Norton, 390 F. Supp. 2d 12, (D.D.C. 2005) (holding that a motion to enforce the court's order enjoining the National Park Service's 2003 decision to allow snowmobiling could not be used to challenge the superseding 2004 NPS decision permitting some use of snowmobiles; the new rule was "a new 'final agency action' resulting from an entirely new rule making process; it imposes different substantive requirements, involved a different scope and is based upon a different administrative record"). That question, too, is not before the Court at this time. The Court notes that whether a subsequent agency action violates a court order seems to be a fact based inquiry. See Int'l Ladies Garment Workers' Union v. Donovan, 733 F.2d 920, 923 (D.C. Cir. 1984) (remanding a motion to enforce for the district court to determine whether an emergency agency rule that temporarily reinstated an agency decision that had been ruled arbitrary and capricious violated the terms of the court of appeals mandate that the decision be reconsidered).