UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HORNBECK OFFSHORE                                    CIVIL ACTION
SERVICES, L.L.C. ET AL.

VERSUS                                              NO. 10-1663

KENNETH LEE SALAZAR ET AL.                          SECTION "F" (2)

## FINDINGS AND RECOMMENDATION

This case arose from the federal government's issuance of a moratorium on all

deepwater drilling in the Gulf of Mexico in the aftermath of the catastrophic Deepwater

Horizon rig explosion and oil spill that occurred on April 20, 2010.  Plaintiff, Hornbeck

Offshore Services, L.L.C. ("Hornbeck"), filed this action challenging the moratorium.

Defendants are the Secretary of the Interior (the "Secretary"), the Director of the

Minerals Management Service ("MMS")[1] and their respective agencies ("defendants" or

the "government").  Hornbeck amended its complaint to add more than 30 additional

plaintiff companies that, like Hornbeck, provide vessel and shore-based support services

to deepwater exploration and production activities in the Gulf.[2]  Several environmental

_____

[1]The Minerals Management Service is now the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE").

[2]Two more companies intervened as plaintiffs, Record Doc. Nos. 129, 130, but later withdrew their intervention.  Record Doc. Nos. 216, 217.  They are not parties to the instant motion.

organizations were granted leave to intervene as defendants in support of the moratorium ("intervenors").  Record Doc. Nos. 42, 43.

On June 22, 2010, the presiding district judge granted plaintiffs' motion for a preliminary injunction against defendants' enforcement of the deepwater drilling moratorium.  On February 2, 2011, Judge Feldman granted plaintiffs' "Motion for Recovery of Attorney's Fees," Record Doc. No. 213, and held defendants in "civil contempt based on the government's determined disregard of this Court's order of preliminary injunction."  Record Doc. No. 226 at p. 7.  Judge Feldman referred to me the "issue of quantum" to be awarded for the government's contemptuous conduct.  Record Doc. No. 227.

I entered a briefing schedule and ordered plaintiffs to "file their motion to set the amount of attorney's fees they seek as a civil contempt sanction" in compliance with Fed. R. Civ. P. 54(d)(2) and Local Rule 54.2.  Record Doc. No. 228.  Plaintiffs filed a timely "Motion to Set Amount of Attorney's Fees and Costs," supported by declarations under penalty of perjury of their counsel and verified exhibits.  Record Doc. No. 233.  The court granted plaintiffs' motion for leave to file under seal the billing records of their two law firms, Record Doc. Nos. 229, 231, which were filed under seal as an appendix to plaintiffs' Motion to Set Amount of Attorney's Fees and Costs.  Record Doc. No. 234.

Defendants filed a timely opposition memorandum and supporting exhibits, and moved for leave to file it all under seal. Record Doc. No. 242. The motion was granted, pending the court's further review, Record Doc. No. 245, and defendants' memorandum and exhibits were filed under seal. Record Doc. No. 246.

Plaintiffs were granted leave to file a supplemental declaration and supplemental appendix, seeking to recover additional attorney's fees and costs they have incurred in connection with their Motion to Set Amount of Attorney's Fees and Costs since their original motion was filed. They were permitted to file the appendix under seal. Record Doc. Nos. 247, 248, 250, 251. Defendants received leave to file a supplemental opposition memorandum, which was also filed under seal. Record Doc. Nos. 253, 254, 255, 256. Plaintiffs seek attorney's fees and costs in the total amount of $1,185,462.96, of which $1,147,076.50 is attorney's fees.

Having reviewed the written submissions of the parties, the record and the applicable law, and for the following reasons, I find and recommend that the motion be GRANTED IN PART AND DENIED IN PART as follows and that plaintiffs be reimbursed by defendants in the amount of $440,596.68 in reasonable attorney's fees and $444.33 for costs.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The chronology of events is essential to determining the quantum of attorney's fees to which plaintiffs are entitled as a sanction for defendants' civil contempt. The Secretary, through the Director of the MMS, issued a moratorium on all deepwater drilling in the Gulf of Mexico on May 28, 2010 (the "first moratorium"). Hornbeck filed the instant action on June 7, 2010.

On June 22, 2010, Judge Feldman granted plaintiffs' motion for a preliminary injunction and issued a preliminary injunction against enforcement of the first moratorium. Record Doc. Nos. 67, 68; Hornbeck Offshore Servs. L.L.C. v. Salazar, 696 F. Supp. 2d 627 (E.D. La. 2010) (Feldman, J.). "[O]ver the next two weeks, the Secretary repeatedly affirmed his intention and resolve to impose a moratorium on deepwater drilling in the Gulf of Mexico." Order and Reasons entered February 2, 2011, Record Doc. No. 226 at pp. 2-3.

On June 23, 2010, defendants appealed the preliminary injunction and moved in this court to stay the preliminary injunction pending their appeal, Record Doc. Nos. 74, 75, while plaintiffs simultaneously moved to enforce the preliminary injunction. Record Doc. No. 69. On the same day, Judge Feldman denied defendants' motion to stay and denied plaintiffs' motion to enforce as premature. Record Doc. No. 82. Defendants

sought a stay of the preliminary injunction in the United States Court of Appeals for the Fifth Circuit on the next day, which that court denied on July 8, 2010.

On July 12, 2010, defendants issued a new decision formally rescinding the first moratorium and imposing another blanket moratorium (the "second moratorium") that, despite a superficial change, was substantively identical to the first moratorium. Order and Reasons, Record Doc. No. 226 at p. 3. Defendants moved the same day to dismiss the instant action or, alternatively, to stay it pending the Fifth Circuit's decision on their motion to vacate the preliminary injunction pending in that court. Record Doc. No. 125. Plaintiffs filed two opposition memoranda. Record Doc. Nos. 134, 150. Governor Bobby Jindal and the State of Louisiana received leave to file an amicus brief in support of plaintiffs' opposition to defendants' motion to dismiss, as did the Offshore Marine Services Association, a trade organization. Record Doc. Nos. 142, 143, 162, 163. Judge Feldman denied without prejudice defendants' motion to dismiss or stay on September 1, 2010. Record Doc. No. 165.

On September 7, 2010, plaintiffs filed a renewed motion to enforce the court's preliminary injunction order. Record Doc. No. 167. Judge Feldman denied this motion on September 30, 2010, "[i]n light of the United States Court of Appeals for the Fifth Circuit's September 29th opinion declaring moot the appeal of the preliminary injunction." Order, Record Doc. No. 185. In its September 29th opinion, the Fifth

Circuit expressly stated that "the preliminary injunction no longer has the same, if any, legal or practical effect," and that the preliminary injunction "is legally and practically dead." Fifth Circuit opinion, Record Doc. No. 206-1 at pp. 2-3 (emphasis added). Thus, the preliminary injunction had a clearly identifiable life span:  birth on June 22, 2010; death on September 29, 2010. Defendants lifted the second moratorium on October 12, 2010.

Plaintiffs filed their Motion for Recovery of Attorney's Fees on December 2, 2010, Record Doc. No. 213, arguing that they were entitled to "reimbursement of their significant attorney's fees on two theories:  first, under a civil contempt theory, and second under a common law claim of bad faith."  Order and Reasons, Record Doc. No. 226 at p. 4.  In granting plaintiffs' motion on February 2, 2011, Judge Feldman found that

> each step the government took following the Court's imposition of a preliminary injunction showcases its defiance:  the government failed to seek a remand; it continually reaffirmed its intention and resolve to restore the moratorium; it even notified operators that though a preliminary injunction had issued, they could quickly expect a new moratorium.  Such dismissive conduct, viewed in tandem with the reimposition of a second blanket and substantively identical moratorium and in light of the national importance of this case, provide this Court with clear and convincing evidence of the government's contempt of this Court's preliminary injunction order.  To the extent the plaintiffs' motion asserts civil contempt based on the government's determined disregard of this Court's order of preliminary injunction, it is GRANTED.

Id. at p. 7.  Judge Feldman also noted that defendants had not issued any deepwater drilling permits since the second moratorium was lifted.  Id. at p. 3.  He did not reach plaintiffs' bad faith argument.

Judge Feldman referred to me for findings and recommendation the "issue of quantum" for defendants' contempt.  Order, Record Doc. No. 227.  The case apparently contains open claims requiring further adjudication and is currently set for trial without a jury on October 11, 2011.  Record Doc. Nos. 201, 202, 203.

II.    ANALYSIS

Plaintiffs seek to recover all of the fees and costs they incurred from the inception of this litigation through February 2011, arguing that defendants' actions after "entry of the preliminary injunction order effectively stripped [plaintiffs] of the relief they had properly obtained."  Plaintiffs' memorandum in support, Record Doc. No. 233-1 at p. 7. After filing their supplemental declaration and appendix, plaintiffs seek a total of $780,946.59 for the attorney's fees and costs incurred by their New Orleans law firm, Jones, Walker, Waechter, Poitevent, Carrère & Denègre L.L.P. ("Jones Walker"), based on a total of 2,497.10 hours worked by Jones Walker attorneys, paralegals and staff. They also seek $404,516.37 in fees and costs incurred by their Washington, D.C. law

firm, Venable, L.L.P., which billed for 703.30 hours worked by attorneys and staff. Thus, plaintiffs seek a total of $1,185,462.96 in attorney's fees and costs.[3]

Defendants oppose plaintiffs' motion on numerous grounds. Defendants' primary argument is that plaintiffs can recover only for attorney's fees and costs that "were incurred by reason of the federal defendants' non-compliance" with the preliminary injunction order. Defendants' opposition memorandum, Record Doc. No. 246 at p. 6. Defendants admit, as they must, that plaintiffs are entitled to recover some portion of the attorney's fees sought, but they contend that the compensable work of plaintiffs' attorneys should be confined to just three motions in this action: plaintiffs' renewed motion to enforce the preliminary injunction, defendants' motion to dismiss and plaintiffs' motion for attorney's fees and costs. Based on the time entries documenting work on those three motions, defendants calculate that plaintiffs "are only entitled to $112,011 in compensation for their contempt-related fees." Id. at p. 7. As to costs, defendants argue that plaintiffs should recover nothing because the costs billed are overhead and/or because plaintiffs fail to connect any of the costs to the court's contempt finding.

---

[3]Plaintiffs' failure to include in their memoranda summaries of each attorney's total hours multiplied by his or her billing rate, which is the basic calculation needed to determine the lodestar, and their practice of lumping together their fees and costs, despite the differing legal standards for awards of fees and costs, have made the court's evaluation of their submissions more difficult and time-consuming that it might otherwise have been.

A.     Standards for Awarding Reasonable Attorney's Fees

The parties agree that determination of a reasonable attorney's fee in this context is a two-step process that begins with determination of the lodestar amount.  The lodestar is an appropriate method for determining an attorney's fee award for civil contempt. Board of Supervisors of La. State Univ. v. Smack Apparel Co., No. 04-1593, 2009 WL 927996, at *2 (E.D. La. Apr. 2, 2009) (Lemmon, J.) (citing Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272-73 (5th Cir. 1977)); Ultimate Living Int'l, Inc. v. Miracle Greens Supplements, Inc., No. 3:05-CV-1745-M, 2008 WL 4133083, at *2 (N.D. Tex. Aug. 29, 2008) (citing Microsoft Corp. v. United Computer Res. of N.J., Inc., 216 F. Supp. 2d 383, 387 (D.N.J. 2002)); Secs. & Exchg. Comm'n v. AmeriFirst Funding, Inc., No. 3:07-CV-1188-D, 2008 WL 2185193, at *1 (N.D. Tex. May 27, 2008) (citing Microsoft Corp., 216 F. Supp. 2d at 387); Apple Corps. Ltd. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480, 484 (D.N.J. 1998) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

> A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting.

Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of

Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311,

319-20 (5th Cir. 1993)).

> The Johnson factors are:
>
> (1) the time and labor required; (2) the novelty and difficulty of the issues;
> (3) the skill required to perform the legal services properly; (4) the
> preclusion of other employment by the attorney; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) the time limitations imposed
> by the client or circumstances; (8) the amount involved and results
> obtained; (9) the experience, reputation, and ability of the attorneys; (10)
> the undesirability of the case; (11) the nature and length of the professional
> relationship with the client; and (12) the award in similar cases.

Johnson, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor

involved, the customary fee, the amount involved and the result obtained, and the

experience, reputation and ability of counsel."  Migis v. Pearle Vision, Inc., 135 F.3d

1041, 1047 (5th Cir. 1998) (citation omitted); accord Saizan v. Delta Concrete Prods.

Co., 448 F.3d 795, 800 (5th Cir. 2006).  Three of the Johnson factors, complexity of the

issues, results obtained and preclusion of other employment, are presumably fully

reflected and subsumed in the lodestar amount.  Heidtman, 171 F.3d at 1043 (quoting

Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986);

Shipes, 987 F.2d at 319-22 & n.9).  After Johnson was decided, the "Supreme Court has

barred any use of the sixth factor," whether the fee is fixed or contingent.  Walker v. U.S.

Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing Dague, 505

U.S. at 567; Shipes, 987 F.2d at 323); see also Perdue v. Kenny A., 130 S. Ct. 1662, 1676

(2010) (citing Dague, 505 U.S. at 565) (district court's "reliance on the contingency of

the outcome contravenes our holding in Dague").

"The lodestar . . . is presumptively reasonable and should be modified only in

exceptional cases."  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing Dague,

505 U.S. at 562); see also Kenny A., 130 S. Ct. at 1669 (reaffirming the "strong

presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation

cannot be used as a ground for increasing an award above the lodestar; and a party

seeking fees has the burden of identifying a factor that the lodestar does not adequately

take into account and proving with specificity that an enhanced fee is justified").

Plaintiffs in the instant case seek enhancement of the lodestar based on the

Johnson factors.  Defendants oppose any enhancement.

Although the party seeking attorney's fees bears the initial burden of submitting

adequate documentation of the hours reasonably expended and of the attorney's

qualifications and skill, the party seeking reduction of the lodestar bears the burden of

showing that a reduction is warranted.  Hensley, 461 U.S. at 433; Wegner v. Standard

Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (hereinafter "LP&L").

      C.     The Hourly Rates Charged by Counsel

First, I must determine whether the rates charged by plaintiffs' counsel were reasonable. Plaintiffs have submitted evidence of the attorney's fees and hourly rates sought. The contemporaneous invoices of Jones Walker are verified by the declarations of plaintiffs' lead counsel, Carl D. Rosenblum, and another partner, Alida C. Hainkel. Declaration of Carl D. Rosenblum dated February 16, 2011, Record Doc. No. 233-2; declaration of Alida C. Hainkel dated February 16, 2011, Record Doc. No. 233-4; Rosenblum' supplemental declaration dated March 24, 2011, Record Doc. No. 248-3. These exhibits establish that thirteen Jones Walker attorneys, Rosenblum, Hainkel, Elizbeth J. Futrell, David M. Hunter, Grady S. Hurly, R. Scott Jenkins, David G. Radlauer, Edward Dirk Wegmann, Tarak Anada, Brett S. Venn, Lauren Courtney Mastio, Marjorie A. McKeithen and Virginia Weichert Gundlach; two paralegals, Camille "Rocky" Bourg, Jr. and Constance Demesne; and staff members, Mary E. Rolland and unnamed "Library Staff," billed time to the instant case.

Rosenblum and Hainkel's declarations, with attached biographies of "the Jones Walker attorneys who performed substantial work on this case," establish the

qualifications of most of the attorneys[4] and the primary paralegal who worked on the case.  Record Doc. No. 233-2 at p. 2.  The lead attorneys on the case, Rosenblum and Hainkel, both specialize in energy law and have 27 years and 18 years, respectively, of experience in complex commercial litigation.  Rosenblum, who is the billing attorney, attests that the Jones Walker attorneys and paralegals billed for their work at hourly rates reflective of each one's expertise and experience, and that the rates are within the market range for attorneys and paralegals with comparable levels of experience in the New Orleans area.

Rosenblum asserts that the fees incurred by Jones Walker attorneys and staff on plaintiffs' behalf were reasonable and necessary given the complexity of the issues, significant time constraints, fast pace and high profile of the case.  He avers that, in this litigation, plaintiffs' attorneys handled matters arising from three distinct sets of clients, comprising 39 different entities; issues of national significance that generated extensive media inquiry and coverage; formal interventions by numerous entities on both sides; dozens of amicus curiae filings in the district and appellate courts; novel questions of administrative law and the scope of judicial review of agency action; interactions with technical experts around the world in preparation for the preliminary injunction motion;

---

[4]Plaintiffs did not supply any biographical information for attorneys Futrell, Jenkins, Radlauer, Wegmann, Anada, or Mastio, or paralegal Demesne.  My staff obtained these attorneys' years of experience from Jones Walker's website.  http://www.joneswalker.com (last visited April 5, 2011).

and, although no formal discovery was conducted or allowed, the need to review and analyze expeditiously the more than 1,000-page administrative record produced by the government in the related case of Ensco Offshore Company v. Salazar et al., C.A. No. 10-1941"F" in this court, to address certain issues about which this court had requested supplemental briefing and in connection with the Fifth Circuit's limited remand order. Rosenblum declaration, Record Doc. No. 233-2 at p. 10.

According to Rosenblum, the Jones Walker attorneys and paralegals kept daily time sheets and the firm billed plaintiffs monthly at the timekeepers' standard hourly rates in 2010, which are set forth in the chart below.  Rosenblum declaration, Record Doc. No. 233-2 at pp. 6-7.  He declares that, for purposes of the instant motion, he consolidated Jones Walker's monthly invoices into two comprehensive billing documents under two different file numbers.  He states that Jones Walker opened a second file number in November 2010 to capture work solely on plaintiffs' motion for attorney's fees, while the attorneys continued to bill work on the merits issues to the original file number.  The two comprehensive billing documents were filed under seal as Exhibits D1 (the merits case) and D2 (the attorney's fees motions) to Rosenblum's declaration.  Id. at p. 8; Exhibits D1 and D2 to Rosenblum's declaration, Record Doc. No. 234.

Plaintiffs have also submitted the declaration under penalty of perjury of John F. Cooney, a partner with Venable, L.L.P., and the lead attorney with that firm who worked

14

closely with the Jones Walker attorneys on all aspects of this litigation. Record Doc. No. 233-3. Cooney's declaration establishes that he has been practicing law since 1977 and has handled complex litigation matters and appeals involving challenges to the legality of the actions of federal government agencies under the Administrative Procedures Act and various federal regulatory statutes. His past experience includes service as Assistant to the Solicitor General, Department of Justice, and Deputy General Counsel for Litigation and Regulatory Affairs, Office of Management and Budget. Rosenblum avers in his declaration, and Cooney's exhibits confirm, that Cooney is "a nationally recognized expert in the Administrative Procedures Act and Administrative Law" who practices at one of the top 100 law firms in the United States, and that Cooney's expertise "made him critical to the litigation team." Rosenblum's declaration, Record Doc. No. 233-2 at pp. 3, 11.

Cooney's declaration includes the biographies of the seven Venable attorneys, Cooney, Margaret N. Strand, Andrew E. Bigart, Christopher K. Diamond, David G. Dickman, Andrew Paul Kawel and Jennifer M. Thomas, and a legislative assistant, Megan Malone, who performed substantial work on this case. Cooney attests that each attorney and the legislative assistant billed at hourly rates reflective of their expertise and experience and that the rates are within the range of comparable rates for attorneys with comparable levels of experience in the Washington, D.C. legal market. According to

15

Cooney, the Venable attorneys and the legislative assistant billed at the hourly rates listed in the chart below, which are reflected on the monthly invoices filed under seal as Exhibit C to Cooney's declaration.  Cooney's declaration, Record Doc. No. 233-3 at p. 5; Exhibit C to Cooney's declaration, Record Doc. No. 234.

Plaintiffs have not submitted any evidence from non-interested attorneys to establish the reasonableness of the hourly rates they request.  Instead, they submitted the results of the 2010 National Law Journal billing survey, which includes high, low and average rates for partners and associates at selected firms in New Orleans and Washington, D.C.  Exhibit C to Rosenblum's declaration, Record Doc. No. 233-2 at pp. 35-45.  Plaintiffs contend that the requested rates for the Jones Walker and Venable attorneys are within the range of hourly rates in the New Orleans and Washington, D.C. markets, respectively.

Finally, plaintiffs included the declaration under penalty of perjury of Samuel A. Giberga, Hornbeck's General Counsel, attesting to the significant time that he spent overseeing and assisting in preparing this matter.  Although plaintiffs do not seek any fee reimbursement for Giberga's time, they submitted his declaration in support of the reasonableness of the time expended by the Jones Walker and Venable attorneys. Declaration of Samuel A. Giberga dated February 18, 2011, Record Doc. No. 233-5.

16

An attorney's requested hourly rate is prima facie reasonable when the attorney requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. LP&L, 50 F.3d at 328.  In the instant case, defendants contest all of the requested hourly rates.  They argue that Washington, D.C. is not an appropriate legal market and that the requested rates for both law firms exceed the reasonable rates in the appropriate, New Orleans legal market.  Defendants' Exhibit A attached to the declaration under penalty of perjury of one of their attorneys, Marissa A. Piropato, contains the reduced hourly rates that defendants propose for each timekeeper, which range from $185 to $325 for partners and from $125 to $140 for associates.  Defendants' Exhibit A, Record Doc. No. 246.[5]

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." Hopwood v. State, 236 F.3d 256, 281 (5th Cir. 2000) (quotation omitted); accord Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63-64 (2006).  In the instant case, Cooney is indeed a "lion at the bar," practicing in one of the largest and most respected firms in the United States.  His billable rate of $725 per hour is eminently

---

[5]The exhibits to Piropato's declaration, which are filed under seal, are also contained on a compact disc that defendants delivered to my chambers for in camera review.

reasonable for his services on the private market in Washington, D.C.  Nevertheless, fee awards in situations like the contempt award here are in large part a regulated market and do not reflect private market standards.  Thus, Cooney is qualified to receive the highest reasonable hourly rate in the New Orleans market.[6]

It is well established that the relevant legal market is where the action is being litigated, in this case, New Orleans.  Kenny A., 130 S. Ct. at 1672; Hopwood, 236 F.3d at 281.  "The relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits.  Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."  Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002) (quotation and citations omitted); accord Thompson v. Connick, 553 F.3d 836, 867-68 (5th Cir. 2008), rev'd on other grounds, 131 S. Ct. 1350 (2011).  The rates that plaintiffs request for the work of the Venable attorneys in this case are based on the rates customarily charged by Washington, D.C. law firms, which are significantly higher than the highest possible reasonable rates for comparable attorneys in the New Orleans legal market.

---

[6]See, e.g., Hopwood, 236 F.3d at 281 (declining to award Washington, D.C., hourly rates in a case that had been litigated in the Western District of Texas to Theodore B. Olson, who had been a former Assistant Attorney General in charge of the Office of Legal Counsel in the United States Department of Justice and was then a partner at a prestigious firm in Washington, D.C. and who became Solicitor General of the United States a year later).  If the Fifth Circuit holds that Mr. Olson, clearly a lion at the bar, cannot recover his Washington, D.C. rate, then neither can Cooney.

Therefore, based on the memoranda and exhibits of the parties; my experience in this court in reviewing and evaluating numerous requests for awards of attorney's fees; my personal knowledge of the qualifications, reputations and skills of many of the attorneys involved; and my knowledge of customary billing rates and attorneys' fee awards in this district, I find that the hourly rates sought of $295 to $420 for partners and $180 to $195 for associates at Jones Walker in this case are at the high end of rates in the New Orleans legal market for attorneys with the skill and experience of these particular attorneys. Given the national significance of this case, the extreme time constraints imposed by the rapidly evolving events, and the high degree of skill and experience of the Jones Walker attorneys, I find that the requested attorney rates for that firm's lawyers are reasonable. Based on Cooney's specialized qualifications, lengthy experience and high level of skill, I find that his work should be compensated at the highest reasonable rate in this district of $450 per hour. See Oreck Direct, LLC v. Dyson, Inc., No. 07-2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009) (Vance, J.) (in case brought under the Lanham Act and Louisiana Unfair Trade Practices Act, rates charged by national law firm of $440-$470 for an associate, and $530 and $765 for two partners, were excessive, when "the top rate for partner-level attorneys [in the New Orleans market] is between $400 and $450 per hour;" awarding a single rate of $400 for all three attorneys "as more in line with local rates for similar services"). I further find that the requested rates for the

19

other Venable attorneys who worked on the case are <u>not</u> customary in this legal community and should be reduced to the reasonable rates charged by the Jones Walker attorneys with comparable experience.  Finally, I find that hourly rates of $95 for the most experienced paralegal and $75 for the less experienced paralegal are reasonable for the two paralegals who worked on the case.

Plaintiffs have cited no authority for the proposition that the work of a "legislative assistant," "staff member" or unnamed "library staff" is compensable as fees.  I therefore recommend that no fees be awarded for the work of Malone, the legislative assistant at Venable, or for any staff member at Jones Walker.  Staff work is overhead, which is subsumed within the hourly rates charged by attorneys.

Thus, I find that the hourly rates listed below for plaintiffs' attorneys and paralegals, although at the high end of the range of prevailing market rates for lawyers and paralegals with comparable experience and expertise in complex litigation in this community, are reasonable in this case.  <u>See</u> <u>Thompson</u>, 553 F.3d at 868 (approving hourly rates of $202 to $312 for experienced attorneys and $67 to $112 for paralegals as "at the upper range of what was reasonable in the" Eastern District of Louisiana from 2003 to 2007); <u>Cedotal v. Whitney Nat'l Bank</u>, No. 94-01397, 2010 WL 5582989, at *13

20

(E.D. La. Nov. 10, 2010) (Chasez, M.J.), report & recommendation adopted as modified,[7] 2011 WL 127157 (E.D. La. Jan. 14, 2011) (Lemmon, J.) (awarding rates of $315 for senior partners, $250 for junior partners and $150 for associates in 15-year-long ERISA litigation, based on current reasonable rate awards in this district); Ranger Steel Servs., LP v. Orleans Materials & Equip., Co., No. 10-112, 2010 WL 3488236, at *1, *3 (E.D. La. Aug. 27, 2010) (Barbier, J.) (rejecting hourly rates of $445 to $475 charged by partner and of $315 to $340 charged by associate in Houston law firm in breach of contract case; awarding the rates charged by New Orleans co-counsel of $360 in 2009 and $395 in 2010 for partner's work); Hebert v. Rodriguez, No. 08-5240, 2010 WL 2360718, at *2 (E.D. La. June 8, 2010) (Barbier, J.), aff'd, No. 10-30489, 2011 WL 1772645 (5th Cir. May 10, 2011) (awarding $300 per hour to "a seasoned civil rights attorney with over 33 years of experience"); Braud v. Transp. Serv. Co., No. 05-1898, 2010 WL 3283398, at *15 (E.D. La. Aug. 17, 2010) (Knowles, M.J.) (hourly rates of $200 for attorney with 30 years of experience and $75 for paralegal "are within the low end of the range of the market rate in this area and . . . are reasonable").

Accordingly, I recommend that plaintiffs be awarded attorney's fees at the following hourly rates.

---

[7]The magistrate judge's report and recommendation was modified slightly to adjust the hours, but not the hourly rates.

## REASONABLE HOURLY RATES

| Jones Walker Timekeeper | Years of Experience | Requested Rate | Reasonable Rate |
|---|---|---|---|
| **Partners** | | | |
| Radlauer | 32 | $420 | $420 |
| Rosenblum | 27 | $420 | $420 |
| Wegmann | 31 | $415 | $415 |
| Futrell | 29 | $375 | $375 |
| Hurly | 32 | $375 | $375 |
| Hunter | 28 | $365 | $365 |
| Jenkins | 16 | $325 | $325 |
| Hainkel | 18 | $300 | $300 |
| **Special Counsel** | | | |
| McKeithen | 18 | $335 | $335 |
| Gundlach | 23 | $295 | $295 |
| **Associates** | | | |
| Anada | 2 | $195 | $195 |
| Mastio | 0-1 | $190 | $190 |
| Venn | 2 | $180 | $180 |
| **Paralegals** | | | |
| Bourg | 23 | $130 | $95 |
| Demesne | unknown | $110 | $75 |

| Venable Timekeeper | Years of Experience | Requested Rate | Reasonable Rate |
|---|---|---|---|
| **Partners** | | | |
| Cooney | 37 | $725 | $450 |
| Strand | 34 | $650 | $420 |

| Of Counsel | | | |
|---|---|---|---|
| Dickman | 24 | $550 | $420 |
| Associates | | | |
| Diamond | 5 | $370 | $200 |
| Bigart | 4 | $330 | $200 |
| Thomas | 3 | $310 | $200 |
| Kawel | 1 | $210 | $180 |

Next, I must determine the reasonable number of hours that plaintiff's counsel expended on the litigation.

### D.   The Hours Expended by Plaintiffs' Counsel

Plaintiffs seek reimbursement for 2,630.45 hours expended by attorneys and paralegals at Jones Walker and 453.40 hours expended by attorneys and paralegals at Venable, for a total of 3,083.95 hours.  Exhs. D1 and D2 to Rosenblum's declaration[8] and Exh. C to Cooney's declaration, Record Doc. No. 234; Rosenblum's supplemental declaration, Record Doc. No. 248-3, and supplemental appendix, Record Doc. No. 251.

Plaintiffs seek a total of $756,538.50 in fees for Jones Walker's work and $390,538 in fees for Venable's work, for a total award of $1,147,076.50 in attorney's fees.  Exhs. D1 and D2 to Rosenblum's declaration and Exh. C to Cooney's declaration, Record Doc. No. 234; supplemental appendix to Rosenblum's supplemental declaration,

---

[8]Hainkel had a duplicate entry for 4.8 hours on June 21, 2010.  Plaintiffs are not seeking fees for that duplicative time.  Rosenblum declaration, Record Doc. No. 233-2 at p. 6 n.2.  Accordingly, I deducted 4.8 hours from Hainkel's total hours on the comprehensive invoice.

23

Record Doc. No. 251.  Defendants argue that plaintiffs failed to demonstrate that they exercised billing judgment or to show that all of the time for which they seek reimbursement was reasonably expended.

> ### 1.   Plaintiffs may recover attorney's fees only for work attributable to defendants' contempt.

Defendants' primary argument is that plaintiffs can recover only for the attorney's fees incurred <u>because of</u> defendants' noncompliance with the preliminary injunction order.  As Judge Feldman has already held, "the present motion centers on entitlement to compensation for the cost of the government's [contemptuous] conduct."  Order and Reasons, Record Doc. No. 226 at pp. 5-6; <u>see also</u> <u>In re Bradley</u>, 588 F.3d 254, 263-64 (5th Cir. 2009) (The purpose of "'compensatory' or 'remedial' civil contempt" is to compensate "a party who has suffered unnecessary injuries or costs because of contemptuous conduct."  Remedial contempt "remedies the consequences of defiant conduct on an opposing party, rather than punishing the defiance per se.") (quotation omitted); <u>Travelhost, Inc. v. Blandford</u>, 68 F.3d 958, 962 (5th Cir. 1995) (order intended to compensate movant for attorney's fees resulting from contemnor's conduct is compensatory in nature); <u>Ostano Commerzanstalt v. Telewide Sys., Inc.</u>, 880 F.2d 642, 650 (2d Cir. 1989) ("Only those fees attributable to the offensive conduct can be awarded."); <u>Cook v. Ochsner Found. Hosp.</u>, 559 F.2d 270, 272-73 (5th Cir. 1977))

("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred <u>because of</u> his adversary's noncompliance.  This includes losses <u>flowing from noncompliance</u> and expenses reasonably and necessarily <u>incurred in the attempt to enforce compliance</u>.") (emphasis added).

Defendants contend that compensable fees should be confined to the work of plaintiffs' attorneys related to just three motions:  defendants' motion to dismiss, Record Doc. No. 125; plaintiffs' renewed motion to enforce the preliminary injunction, Record Doc. No. 167; and plaintiffs' motion[9] for attorney's fees.  Record Doc. Nos. 213, 233. Defendants concede that reasonable time incurred on plaintiffs' application for attorney's fees is compensable.  <u>Riley v. City of Jackson</u>, 99 F.3d 757, 760 (5th Cir. 1996); <u>Cruz v. Hauck</u>, 762 F.2d 1230, 1233-35 (5th Cir. 1985); <u>Lewallen v. City of Beaumont</u>, No. 1:05-CV-733-TH, 2009 WL 2175637, at *8 (E.D. Tex. July 20, 2009), <u>aff'd</u>, 394 F. App'x 38 (5th Cir. 2010); <u>Chaparral Tex., L.P. v. W. Dale Morris, Inc.</u>, No. H-06-2468, 2009 WL 455282, at *12 n.5 (S.D. Tex. Feb. 23, 2009).

Although plaintiffs overreach by arguing that they should recover <u>all</u> of their attorney's fees from the commencement of this litigation to the date of their supplemental

---

[9]Plaintiffs actually filed two motions for attorney's fees:  the "Motion for Recovery of Attorney's Fees," Record Doc. No. 213, which Judge Feldman granted on February 2, 2011, and the instant "Motion to Set Amount of Attorney's Fees and Costs."  Record Doc. No. 233.  The parties treat the two motions as one for purposes of calculating an award of attorney's fees, and I have done the same.

declaration and appendix, defendants' argument that plaintiffs' recovery should be limited to these three motions is too narrow an interpretation of Judge Feldman's order holding defendants in contempt. Judge Feldman's order makes clear that defendants' contempt of the preliminary injunction, and nothing else, is the basis for his award of attorney's fees. "[E]ach step the government took <u>following</u> the Court's imposition of a preliminary injunction [on June 22, 2010] showcases its defiance . . . . To the extent the plaintiffs' motion asserts civil contempt based on the government's determined <u>disregard of this Court's order of preliminary injunction</u>, it is GRANTED." Order and Reasons, Record Doc. No. 226 at p. 7 (emphasis added). Thus, I find that plaintiffs cannot recover any attorney's fees for legal work done <u>before</u> June 22, 2010, the day the preliminary injunction was issued.

Defendants also argue that plaintiffs cannot recover for any attorney's fees incurred after September 30, 2010, when Judge Feldman denied plaintiffs' renewed motion to enforce the preliminary injunction (except for plaintiffs' work on their motion for attorney's fees after that date). In his February 2, 2011 order holding defendants in contempt, Judge Feldman did not specify when the contemptuous conduct ended. However, on September 30, 2010, he denied plaintiffs' renewed motion to enforce the preliminary injunction "[i]n light of the United States Court of Appeals for the Fifth Circuit's September 29th opinion declaring moot the appeal of the preliminary

26

injunction."  Order, Record Doc. No. 185.  The Fifth Circuit held on September 29th that "the preliminary injunction no longer has the same, if any, legal or practical effect," and that the preliminary injunction "is legally and practically <u>dead</u>."  Fifth Circuit opinion, Record Doc. No. 206-1 at pp. 2-3 (emphasis added)

Thus, the preliminary injunction had a clear life span:  a fixed and determinable date of birth followed by a judicially pronounced date of death.  Even litigants as dauntless and seemingly unmindful of judicial authority as defendants have appeared to be in this case cannot be assessed civil contempt penalties for actions taken before the injunction was issued or after it had lapsed.  Based on this court's preliminary injunction order, the Fifth Circuit's opinion dismissing as moot defendants' appeal of that order and pronouncing the preliminary injunction "dead," Judge Feldman's order denying plaintiffs' renewed motion to enforce the preliminary injunction and his order holding defendants in contempt, I find that September 29, 2010, is the latest date when defendants could have been in contempt of the preliminary injunction.  Therefore, plaintiffs cannot recover for any attorney's fees incurred <u>after</u> that date (except those reasonable fees incurred in connection with their motion for attorney's fees).

As to the hours billed by plaintiffs' attorneys between June 22 and September 29, 2010, during the life span of the preliminary injunction, defendants submitted numerous spreadsheet exhibits with excerpts from plaintiffs' time entries.  The time entries that

27

defendants contest for various reasons are demonstrated on each spreadsheet, which are categorized by the particular reason that defendants cite for the argued reduction. Defendants' Exhibits B through N, Record Doc. No. 246.

The time entries of plaintiffs' attorneys that defendants admit are compensable are shown on Defendants' Exhibit A, Record Doc. No. 246. This exhibit contains three spreadsheets, each of which reproduces the entries associated with one of three motions: (1) defendants' motion to dismiss, filed on July 12, 2010, Record Doc. No. 125; (2) plaintiffs' renewed motion to enforce the preliminary injunction, filed on September 7, 2010, Record Doc. No. 167; and (3) plaintiffs' motion(s) for attorney's fees and costs, filed on December 3, 2010 and February 18, 2011, Record Doc. Nos. 213, 233. Defendants concede, as they must, that the work of plaintiffs' counsel on these three motions is recoverable, but they argue that these three motions are the only contempt-related work for which plaintiffs should recover. Defendants multiply the admittedly compensable hours on their Exhibit A by defendants' proposed hourly rates for each of plaintiffs' attorneys, which are significantly lower than the rates actually billed. Thus, defendants argue that plaintiffs are only entitled to recover a total of $112,011 in contempt-related attorney's fees.

Judge Feldman's contempt order does not restrict the award of attorney's fees so narrowly. He held that "each step the government took following the Court's imposition

of a preliminary injunction showcases its defiance," and listed four non-exclusive examples, including defendants' failure to seek a remand of the matter from this court to the agency.  Order and Reasons, Record Doc. No. 226 at p. 7.  Judge Feldman's order and defendants' ongoing contempt during the relevant time period defeat their current arguments for deducting <u>all</u> of the time that plaintiffs' attorneys spent on defendants' appeal (which included a motion to stay the action in this court) and plaintiffs' initial motion to enforce the preliminary injunction, as well as plaintiffs' monitoring of press reports and gathering information concerning the government's actions and the effects of those actions on the oil and gas industry, plaintiffs' conferences with and review of the pleadings of intervenors and amicus curiae in this court and/or the Fifth Circuit, and their review of documents filed in and conferences with attorneys for the plaintiffs in the related case of <u>Ensco Offshore Company v. Salazar et al.</u>, C.A. No. 10-1941"F".

Defendants' failure to seek a remand to the agency means that the continuation of this litigation, including, at least in part, defendants' appeal of the preliminary injunction to the Fifth Circuit and their motion in the appeals court to stay the litigation in this court, were intertwined with their contemptuous conduct.  Even though Judge Feldman denied plaintiffs' initial motion to enforce the preliminary injunction, Record Doc. No. 69, plaintiffs' attorneys researched, drafted and filed the motion the day after the Secretary publicly stated his intent to continue imposing a moratorium on deepwater drilling.

29

Therefore, plaintiffs' motion to enforce the injunction was directly related to defendants' conduct that was ultimately found to be contemptuous.

As to the time that plaintiffs' attorneys spent monitoring press reports regarding the first moratorium and this litigation, or interacting with sources other than parties to this lawsuit, I cannot find that such time is noncompensable per se. This litigation involves the federal government's public actions that affected 39 parties and thousands of non-parties who live and work along the coast of or in the Gulf of Mexico. Some monitoring and collection of information from sources outside the parties and pleadings of this lawsuit, including press reports, were necessary parts of the work that plaintiffs' attorneys performed in conducting the litigation, and some fees should be recovered. On the other hand, plaintiffs have presented no evidence that their own press releases and interviews were essential to this litigation or anything other than public relations, not legal, activity. The fees of plaintiffs' attorneys in this regard cannot be taxed against defendants. The blanket deduction discussed below should adequately discount the relatively small amount of time that was billed in this regard.

> 2.   Plaintiffs may not recover fees incurred before entry of the preliminary injunction.

As discussed above, plaintiffs' legal fees incurred <u>before</u> entry of the preliminary injunction order are <u>not</u> recoverable because they are unrelated to defendants' contempt.

Accordingly, I will deduct from the total 3,083.95 hours requested by plaintiffs all hours billed by their attorneys <u>before</u> entry of the preliminary injunction on June 22, 2010, which are noncompensable.  I find that, before considering additional reductions in the hours incurred by plaintiffs' attorneys, Jones Walker attorneys reasonably expended 1,803.60 hours and Venable attorneys reasonably expended 242 hours, for a subtotal of 2,045.60 hours.

3.      Plaintiffs may not recover fees incurred in the merits litigation after September 29, 2010.

As to attorney time expended on the merits case (<u>i.e.</u>, not including the reasonable time plaintiffs' counsel spent on their motion for attorney's fees) <u>after</u> September 29, 2010, the day of the Fifth Circuit's pronunciation that the preliminary injunction was "dead," I have found that all time incurred <u>after</u> that date should be deducted.  After making these deductions from the previous reasonable subtotals, I find that Jones Walker attorneys reasonably expended 1,706.40 hours and Venable attorneys reasonably expended 230 hours, for a total of 1,936.40 compensable hours.

Having deducted the time incurred by plaintiffs' attorneys that could not have been related to defendants' contempt of the preliminary injunction because it was outside the life span of the preliminary injunction (<u>i.e.</u>, work that was performed before June 22 and

31

after September 29, 2010, except for the compensable work on plaintiffs' attorney's fees motion after that date), I next address defendants' arguments for further reducing the hours billed between those two dates.

4.   Defendants' exhibits are unpersuasive.

In their original memorandum in opposition to plaintiffs' motion, defendants provided spreadsheet exhibits that contain excerpts of plaintiffs' time entries.  Each spreadsheet is categorized by defendants' particular arguments as to why the entries in that category are noncompensable.  Thus, for example, defendants state that their Exhibit C shows "work in connection with Ensco [Offshore Company v. Salazar et al., C.A. No. 10-1941"F"] and other matters besides the instant litigation, which have no plausible connection to the finding of contempt;" Defendants' Exhibit D lists "legal work in connection with intervenor-related filings, which do not involve any conduct by the Federal Defendants;" Defendants' Exhibit E contains "legal work in connection with amicus-related filings, which does not concern Federal Defendants' conduct;" Defendants' Exhibit F shows "legal work in connection with Federal Defendants' appeal, which would have occurred irrespective of any contempt;" and Defendants' Exhibit G contains hours and fees "incurred in filing the first motion to enforce, which the Court denied as premature."  Defendants' memorandum in opposition to plaintiffs' motion, Record Doc. No. 246 at p. 8.

Although some of defendants' additional arguments for reducing plaintiffs' hours have merit, their spreadsheets and their conclusions based on those exhibits are largely unpersuasive, for two reasons.  First, the exhibits contain defendants' <u>estimates</u> of the fees that they deem compensable.  Defendants contend that the block-billing practices of plaintiffs' attorneys forced defendants to estimate the time that a timekeeper spent on particular tasks within each disputed billing entry.  "'Block billing' is a time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." <u>HCC Aviation Ins. Group, Inc. v. Emp'rs Reins. Corp.</u>, No. 3:05-CV-744(BH), 2008 WL 850419, at *6 (N.D. Tex. Mar. 21, 2008) (quotation and citation omitted).

While block billing makes it more difficult to assess the reasonableness of the hours that plaintiffs claim, I cannot accept defendants' proposed reductions because they have not explained how they arrived at the specific estimated fees that they deducted from each block entry. <u>See</u> <u>Sapp v. Snuffer's Rests. Inc.</u>, No. 3:07-CV-273-M, 2010 WL 6194117, at *3 (N.D. Tex. Nov. 23, 2010), <u>report & recommendation adopted</u>, 2011 WL 1042289 (N.D. Tex. Mar. 21, 2011) (quoting <u>James v. City of Dallas</u>, No. 3:98CV0436R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (citing <u>No Barriers, Inc. v. Brinker Chili's Tex., Inc.</u>, 262 F.3d 496, 501 (5th Cir. 2001); <u>Wegner</u>, 129 F.3d at 823)) ("A party challenging the amount of attorney's fees must explain why or how the requested

fees are unreasonable. . . . 'Without detailed information explaining why or how the total number of hours or the rates are unreasonable, an objection to a fee request does not constrain the court's discretion.'").

Second, defendants' spreadsheets do not specify the amount of attorney <u>time</u> deducted from each block entry.  Rather, defendants listed on the spreadsheets only a proposed reduced <u>fee</u> for each contested entry, based on their proposed, drastically reduced hourly rates for each timekeeper, which are rates that I have not adopted. Defendants' fee calculations do not assist me in determining each timekeeper's reasonable <u>hours</u>, as I must to calculate the lodestar.  Nonetheless, to the extent that defendants identified on their exhibits particular entries that contain tasks that they contend are noncompensable, I have used the spreadsheets to locate those disputed tasks.

5.   <u>Plaintiffs fail to demonstrate the exercise of billing judgment.</u>

Plaintiffs' evidence, in general, adequately documents the work that their attorneys performed.  Defendants argue, however, that the evidence fails to demonstrate that plaintiffs exercised billing judgment.

All time that is excessive, duplicative or inadequately documented should be excluded.  <u>Watkins</u>, 7 F.3d at 457.  Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking attorney's fees awards.  <u>Green</u>, 284 F.3d at 662 (citing <u>Walker</u>, 99 F.3d at 769); <u>accord Hensley</u>, 461

34

U.S. at 433-34.  The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment."  Walker, 99 F.3d at 770.

"The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."  Id. (reducing fee award by 15% for lack of billing judgment) (citing Leroy v. City of Houston, 831 F.2d 576, 586 (5th Cir. 1987) (reducing award by 13%)); see also Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 181-82 (5th Cir. 2007) (affirming 12.5% reduction for lack of billing judgment); Saizan, 448 F.3d at 800 (affirming 10% reduction for vagueness, duplicative work and lack of billing judgment); Hopwood v. Tex., 236 F.3d 256, 279 (5th Cir. 2000) (approving 25% reduction based on inadequacy of time entries, duplicative work product and lack of billing judgment); Klebe v. Univ. of Tex. Health Sci. Ctr., No. A-08-CA-091, 2010 WL 1544394, at *5 (W.D. Tex. Apr. 13, 2010) (reducing hours by 15% "to account for the vague time keeping and lack of demonstration of billing judgment" when "the records contain no indication of the hours the attorneys wrote off as redundant, unproductive, or excessive during this lengthy litigation").

Rosenblum avers in his declaration that he initially exercised billing judgment by staffing the case with attorneys who have extensive experience in federal court practice

and the substantive law; using partners and associates with lower billing rates to perform research, draft pleadings and review documents; and using a paralegal for document control, file organization and other tasks, all in an effort to maximize attorney expertise and minimize duplication and excessive fees.  He states that the level of staffing was necessary due to the significant time restraints and fast-paced nature of this litigation.

Second, Rosenblum declares that he exercised billing judgment by reviewing all of Jones Walker's bills and time entries for reasonableness and necessity.  Record Doc. No. 233-2 at pp. 4-5.  He avers that "dozens of hours of attorney time" were not captured on the time sheets because of the time constraints plaintiffs faced in litigating this case and that he did not attempt to re-capture such time for purposes of the instant motion. He states that the fee statements submitted to the court contain occasional notations that certain time was expended but not recorded, or recorded but not billed.  Id. at pp. 7-8. However, my review of the fee statements has not revealed any such notations, other than a few administrative tasks that are marked "no charge."

Cooney similarly declares that he exercised billing judgment for Venable by staffing this matter with attorneys with extensive experience in federal court practice and the substantive law and that he tried to maximize expertise while minimizing duplication and excessive fees.  He states that he reviewed all of Venable's bills to assess their reasonableness and necessity.  Record Doc. No. 233-3 at pp. 3-5.  He avers that, before

36

submitting each monthly invoice to the client, he wrote down or wrote off any time entry that he concluded "did not result in the client receiving fair value for the amount to be billed." Id. at p. 6.

"These conclusory assertions do not constitute billing judgment.  In short, the billing records contain no indication of the hours the attorneys wrote off as redundant, unproductive, or excessive during this lengthy litigation." Abner v. Kan. City So. Ry., No. 03-0765, 2007 WL 1805782, at *2 (W.D. La. June 21, 2007) (Stagg, J.), aff'd, 541 F.3d 372 (5th Cir. 2008) (citing Walker, 99 F.3d at 770; Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990); Leroy, 831 F.2d at 585).

As previously discussed, plaintiffs cannot recover for all of the hours expended in this entire litigation.  Their failure to pare down the hours they claim to the concretely identifiable time period during which the preliminary injunction was in effect and defendants were actually in contempt, is one example of a broader failure to demonstrate the exercise of billing judgment.

I am not entirely persuaded by defendants' arguments that plaintiffs' attorneys overstaffed this matter or that the attorneys communicated with each other via excessive and duplicative e-mails, telephone calls and office conferences. See Defendants' Exh. H, Record Doc. No. 246.  As described in Rosenblum's declaration, Record Doc. No. 233-2 at pp. 4-5, and Cooney's declaration, Record Doc. No. 233-3 at p. 4, plaintiffs used

multiple attorneys for different tasks during the highly time-pressured months of the litigation, but some of the numerous attorneys only billed a few hours.  The bulk of the work was done by the two Jones Walker lead partners, Rosenblum and Hainkel, along with one associate and one paralegal, which I find was reasonable staffing of this matter. Obviously, the attorneys assigned to the different tasks had to talk to each other in some fashion about the work.

On the other hand, the use of multiple attorneys inevitably led to some duplicative and excessive time, for which defendants should not be responsible.  For example, on July 8, 2010, Jones Walker billed for the time of four attorneys and one paralegal to attend a hearing and oral argument, while seven attorneys worked between August 16 and 24, 2010 on a post-hearing supplemental brief.

Defendants also argue that block billing is "prohibited" in the Fifth Circuit.  To the contrary, the Fifth Circuit has held that a district court does not abuse its discretion in awarding fees, despite the use of block billing, when the district court "carefully considered" the fee statements and found them "specific enough to determine that the hours claimed were reasonable for the work performed. . . .  Indeed, even a failure to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." Hollowell

v. Orleans Reg'l Hosp. LLC, 217 F.3d 379, 392-93 (5th Cir. 2000) (quotation omitted); accord Neely v. Regions Bank, Inc., 262 F. App'x 630, 634 (5th Cir. 2008)).

I have carefully reviewed the fee statements submitted in this case, and I find that the block-billing entries do not present such a significant obstacle to determining the reasonable time that plaintiffs' attorneys spent that the entries must be discounted entirely. This does not mean, however, that plaintiffs may recover for all of the time claimed. Plaintiffs are entitled to receive attorney's fees only as to tasks related to defendants' contempt of court and only as to time reasonably (i.e., not excessively or duplicatively) expended on those tasks. Block billing makes it difficult, but not impossible, to ascertain how much time each timekeeper spent on compensable and noncompensable tasks; whether the total amount of time spent on compensable tasks was reasonable; and whether the work described by one or more attorneys was duplicative of the work of other attorneys. As a result of block billing, the necessity for and reasonableness of many of the hours claimed is inadequately documented.

Similarly, the vague descriptions of much of the work that plaintiffs' attorneys (primarily partners) performed makes it difficult to ascertain how much time they spent on compensable and noncompensable tasks and whether the amount of time spent on compensable tasks was reasonable. Entries such as "office conferences with Jones Walker attorneys," "multiple e-mails regarding status and strategy," "continued review

39

of miscellaneous e-mails and court filings," "review briefs," "review of case law," "multiple calls to client, co-counsel," "next steps in litigation" and "continue work on open issues," which appear throughout the Jones Walker and Venable fee statements, are too vague to document adequately the tasks performed.  See Walker, 99 F.3d at 773 (rejecting fee request that contained "terse listings" such as "'library research,' 'analyzing documents,' 'reading background documents,' 'phone interviews,' with no further explanation. . . .  [N]o responsible client would accept these records as capable of supporting a bill."); LP&L, 50 F.3d at 326 n.11 (vague entries such as "revise memorandum," "review pleadings," "review documents" and "correspondence" inadequate to support fee request); Von Clark v. Butler, 916 F.2d 255, 259 & n.6 (5th Cir. 1990) (criticizing as "scanty and lacking in explanatory detail" entries such as "'telephone call,' or 'trial preparation,' or 'travel to Beaumont to attend deposition' without any identification whatsoever of the subject matter").

Defendants also argue that plaintiffs cannot recover for work performed in connection with the Ensco litigation and other matters that are unrelated to their contempt, including plaintiffs' work related to the proposed and actual filings of intervenors and amici curiae in this court, which defendants contend did not involve any contemptuous conduct by them, and plaintiffs' work on defendants' appeal to the Fifth Circuit, which defendants contend would have occurred regardless of any contempt.

Defendants' Exhibits C, D and E identify those time entries that include these allegedly noncompensable tasks.

Defendants' arguments in this regard have merit in part. As previously discussed, pursuant to Judge Feldman's order, plaintiffs can only recover for time spent on tasks related to defendants' contempt of this court's preliminary injunction. Some of the time that defendants identify on their exhibits regarding plaintiffs' involvement with the Ensco and other matters occurred before June 22, 2010 or after September 29, 2010. I have already deducted these entries because they were not incurred during the life span of the preliminary injunction, which is the only time period during which defendants could have been in contempt of it.

As to the remainder of the disputed tasks in this category, the analysis is not as simple as defendants contend. Although plaintiffs in the instant case are not parties in Ensco Offshore Company v. Salazar et al., C.A. No. 10-1941"F", the Ensco plaintiffs filed their complaint and amended complaint on July 9 and 20, 2010, respectively, during the period of defendants' contemptuous conduct, and the Ensco plaintiffs brought similar claims, challenging both the first and second moratoria, against the same defendants as in this case. C.A. No. 10-1941"F", Record Doc. Nos. 1, 13. The Ensco case is not consolidated with the instant case, but the two cases are so closely related that Judge Feldman has held a joint status conference and issued joint orders in the two cases. See

41

Record Doc. Nos. 198, 200, 202, 203.  In addition, Rosenblum declares that no formal

discovery was conducted or allowed in the instant case, but that "Jones, Walker attorneys

had to expeditiously review and analyze" the 1,000-plus page administrative record

produced by the government in the <u>Ensco</u> matter "to address certain issues for which the

court had requested supplemental briefing and in connection with the Fifth Circuit's

limited remand order."  Rosenblum declaration, Record Doc. No. 233-2 at ¶ 17.  The

closely connected nature of the two cases is reflected in the Fifth Circuit's remand order,

which concerned defendants' filing in that court of a motion to declare the preliminary

injunction moot after they issued the second moratorium.  <u>Hornbeck Offshore Servs.,</u>

<u>LLC v. Salazar</u>, No. 10-30585, 2010 WL 3219469 (5th Cir. Aug. 16, 2010).

It is well established that "[a] court need not segregate fees when the facts and

issues are so closely interwoven" that the time spent on separate claims or against

separate defendants in the same litigation cannot reasonably be divided.  <u>Mota v. Univ.</u>

<u>of Tex.</u>, 261 F.3d 512, 528 (5th Cir. 2001) (citing <u>Abell v. Potomac Ins. Co.</u>, 946 F.2d

1160, 1169 (5th Cir. 1991)).  The Fifth Circuit has also allowed the recovery of

attorney's fees for time expended on collateral proceedings when the work on the

collateral matter was necessary to litigate effectively the claim that was the basis for the

award of fees in the matter before the court.  <u>See</u> <u>CIT Group/Equip. Fin. v. Condere</u>

<u>Corp.</u>, 65 F. App'x 509, 2003 WL 1922992, at *7 (5th Cir. 2003) (affirming award of

42

attorney's fees to plaintiff CIT Group, which included fees for tasks related to other matters, when the fee award case on appeal to the Fifth Circuit from a federal district court in Mississippi, the defendant's separate bankruptcy litigation and a lawsuit brought against CIT by a third party in a Pennsylvania federal court, which involved the same property that was at issue in the Mississippi action, "were intertwined and CIT sought the assistance of the [law] firm in coordinating all the litigation. The district court was correct in accepting CIT's evidence that the fees were necessary and reasonable . . . ."); Green, 284 F.3d at 662 (upholding attorney's fee award to successful Title VII plaintiff that included work performed on worker's compensation case because such work made available to plaintiff "information and discovery which was necessary to effectively litigate the Title VII claim"); see also Wright v. Blythe-Nelson, No. Civ.A.3:99CV2522-D, 2004 WL 2870082, at *6 (N.D. Tex. Dec. 13, 2004) (awarding "attorney's fees incurred to litigate collateral lawsuits that did not relate to the merits of [plaintiff's successful] Title VII claims, including actions associated with [one defendant's] insurance coverage and defendants' bankruptcies").

Thus, to the extent that, during the relevant time period and to represent the interests of their clients, counsel for plaintiffs in the instant case:  shared factual information and legal strategy with counsel for the Ensco plaintiffs and for those intervenors and amici curiae who supported the Hornbeck plaintiffs in pursuit of their

common litigation goals; had to research the administrative record filed in the Ensco matter to address issues raised by this court and the Fifth Circuit; had to review and decide whether to support or oppose the filings of intervenors and amici curiae in this court and the Fifth Circuit; and were simultaneously opposing defendants' attempts in the Fifth Circuit to stay the preliminary injunction and dismiss this case, I cannot conclude that all of plaintiffs' counsel's time in this regard was not spent on matters related to defendants' contempt.  An attorney must act as a zealous advocate in a high-profile, rapidly evolving lawsuit, in which extrajudicial events and filings and judicial rulings in other courts may affect the needs of the clients and the attorney's litigation strategy.  Many of the tasks described by plaintiffs' attorneys that seem facially related to the Ensco litigation and other matters are so intertwined with the facts and issues in the instant case that the time and fees for those tasks cannot be segregated, and were reasonable and necessary in the instant case.  Nonetheless, counsel for plaintiffs could have done a better job of segregating tasks that were arguably unrelated or only tangentially related to defendants' contempt.

Although I have thoroughly reviewed plaintiffs' invoices, a line item review in this report and recommendation of the voluminous time records would be extremely time-consuming and fruitless in trying to segregate the reasonable time that plaintiffs' counsel spent on each compensable task.  The district "court need not explicitly calculate the

lodestar to make a reasonable award" and has the discretion to award "only a small fraction of the amount requested" when attorney's fees are due only for a portion of the litigation, provided that the fee documentation is adequate.  No Barriers, Inc., 262 F.3d at 500-01 (citing Wegner, 129 F.3d at 822-23).  It is appropriate to make a percentage reduction in plaintiffs' fee request to reflect their entitlement to fees only as to time reasonably expended on and related to defendants' contempt of the preliminary injunction order.  Walker, 99 F.3d at 770.

Accordingly, I will reduce the previously calculated reasonable hours by 15% to reflect plaintiffs' lack of billing judgment, use of block billing, vagueness and failure to eliminate some matters that should have been, but were not, segregated.  Before taking that reduction, however, I address two of defendants' additional arguments.

> 6.   Plaintiffs' partial redactions

Defendants contend that plaintiffs should not recover fees for the time entries that plaintiffs have partially redacted because, without a complete description of the work, the entries are not properly documented.  Plaintiffs have not adequately explained why they partially redacted some time entries in the Jones Walker fee statements, which have been filed under seal.  Rosenblum declares vaguely that the time entries have "limited redactions in order to further protect the names of certain individuals and entities with whom we consulted on this matter and to maintain the sensitive, confidential and/or

privileged nature of certain subject matters researched or considered where <u>public disclosure</u> would be harmful, prejudicial and/or in violation of ethical rules." Rosenblum declaration, Record Doc. No. 233-2 at ¶ 14 (emphasis added). However, filing the fees statements under seal, as plaintiffs have done, protects against public disclosure of confidential or sensitive information.

Furthermore, the vast majority of the contents of the fee statements are not privileged in the first instance. "Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the privilege." <u>Nguyen v. Excel Corp.</u>, 197 F.3d 200, 206 (5th Cir. 1999) (citations omitted). "As a general rule, client identity and fee arrangements are <u>not</u> protected as privileged." <u>In re Grand Jury Subpoena for Attorney Representing Crim. Defendant Reyes-Requena</u>, 926 F.2d 1423, 1431 (5th Cir. 1991) (citations omitted) (emphasis added); <u>accord</u> <u>Vingelli v. United States</u>, 992 F.2d 449, 452 (2d Cir. 1993).

> The attorney-client privilege is construed narrowly, to protect from disclosure only those <u>communications</u> from client to attorney that were intended to remain confidential and made for the purpose of seeking legal advice. <u>Communication[s]</u> between an attorney and client regarding such information as identity of client, terms and conditions of employment, amount of fee, identification of payment by case file name, and the general purpose of the work performed, are not privileged.

In re Ginther, No. 07-80200-G3-11, 2008 WL 4107487, at *5 (Bankr. S.D. Tex. Aug. 29, 2008) (emphasis added) (citing United States v. Alexander, 287 F.3d 811 (9th Cir. 2002); Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001); Howell v. Jones, 516 F.2d 53 (5th Cir. 1975); United States v. Ponder, 475 F.2d 37 (5th Cir. 1973)) (additional citations omitted).  Thus, the redacted client names (if that is what the redactions are) and the general purpose of the work performed are not privileged communications.

Moreover, as I and other judges in this court have repeatedly held, to the extent that the attorney-client privilege may protect some portions of the invoices, the privilege is waived by seeking reimbursement for attorney's fees.  Monroe's Estate v. Bottle Rock Power Corp., No. 03-2682, 2004 WL 737463, at *11 n.31 (E.D. La. Apr. 2, 2004) (Knowles, M.J.), aff'd, 2005 WL 119883 (E.D. La. Jan. 19, 2005) (Fallon, J.); So. Scrap Mat'l Co. v. Fleming, No. 01-2554, 2003 WL 21474516, at *13 n.40 (E.D. La. June 18, 2003) (Knowles, M.J.); In re Cent. Gulf Lines, Inc., No. 97-3829, 2001 WL 30675, at *2 (E.D. La. Jan. 11, 2001) (Livaudais, J.); Tonti Props. v. Sherwin-Williams Co., No. 99-892, 2000 WL 506015, at *2 (E.D. La. Apr. 27, 2000) (Wilkinson, M.J.); Newpark Envtl. Servs., L.L.C. v. Admiral Ins. Co., No. 99-331, 2000 WL 136006, at *3-4 (E.D. La. Feb. 3, 2000) (Wilkinson, M.J.); C.J. Calamia Constr. Co. v. Ardco/Traverse Lift Co., No. 97-2770, 1998 WL 395130, at *2 (E.D. La. July 14, 1998) (Clement, J.).  Because

plaintiffs' request for attorney's fees necessarily requires them to place the reasonableness of the work at issue, they have waived their privilege as to the invoices.

I find that many of the redactions, especially in McKeithen's time entries, are significant enough to make those entries incomprehensible and to merit some additional reductions in the reasonable hours. Rather than attempt to parse how many hours should be attributed to each of the many redactions in the entries of several attorneys, I will deduct 50% of McKeithen's previously calculated reasonable time to account for all of the redacted, incomprehensible time entries.

### 7.   Paralegal time and nonlegal tasks

Defendants argue that portions of the billed paralegal and attorney time should be deducted because the work was clerical, ministerial or administrative, rather than legal. Defendants' Exhibit K lists the few attorney tasks and Exhibit M lists the paralegal tasks that defendants contend are noncompensable for this reason.

It is well established that fees for paralegal time are recoverable as an element of reasonable attorney's fees, if the work performed is legal rather than clerical. Missouri v. Jenkins, 491 U.S. 274, 288 (1989); Thompson, 553 F.3d at 868; Vela v. City of Houston, 276 F.3d 659, 681(5th Cir. 2001); Volk v. Gonzalez, 262 F.3d 528, 535 (5th Cir. 2001); Walker, 99 F.3d at 773. I find that the vast majority of the time billed by the Jones Walker paralegals was for legal, not clerical, work.

Some small amount of paralegal and attorney time appears to have been spent on tasks that could be characterized as clerical, such as downloading documents and arranging for copies to be made.  I find that the 15% across-the-board reduction discussed above adequately accounts for any paralegal or attorney time spent on clerical matters, and that no additional reduction need be made for this reason.

Thus, I will reduce by 15% the reasonable hours incurred from June 22 through September 29, 2010 to reflect plaintiffs' counsel's lack of billing judgment, use of block billing, vagueness and failure to segregate some noncompensable time during the life span of the preliminary injunction.  After reducing McKeithen's time by 50% and reducing all of the previously calculated reasonable hours by 15%, I find that Jones Walker's attorneys reasonably expended 1,409.81 hours and Venable's attorneys reasonably expended 195.5 hours, for a total of 1,605.31 hours.

Multiplying the total reasonable hours by the reasonable rates for each timekeeper yields a lodestar amount as follows.

| Jones Walker Timekeeper | Reasonable Hours | Reasonable Rate | Reasonable Fees |
|---|---|---|---|
| Radlauer | .170 | $420 | $      71.40 |
| Rosenblum | 262.990 | $420 | $110,455.80 |
| Wegmann | 0 | $415 | $        0 |
| Futrell | 2.125 | $375 | $     796.88 |
| Hurly | 14.365 | $375 | $   5,386.88 |

| Hunter | .255 | $365 | $         93.08 |
| Jenkins | 0 | $325 | $         0 |
| Hainkel | 501.330 | $300 | $150,399.00 |
| McKeithen | 40.630 | $335 | $  13,611.05 |
| Gundlach | 167.110 | $295 | $  49,297.45 |
| Anada | 3.485 | $195 | $        679.58 |
| Mastio | .425 | $190 | $          80.75 |
| Venn | 254.405 | $180 | $  45,792.90 |
| Bourg | 162.265 | $ 95 | $  15,415.18 |
| Demesne | .255 | $ 75 | $          19.13 |
| SUBTOTAL | 1,409.810 | | $392,099.08 |

| Venable Timekeeper | Reasonable Hours | Reasonable Rate | Reasonable Fees |
| --- | --- | --- | --- |
| Cooney | 30.600 | $450 | $  13,770.00 |
| Strand | 8.160 | $420 | $    3,427.20 |
| Dickman | 7.480 | $420 | $    3,141.60 |
| Diamond | 21.505 | $200 | $    4,301.00 |
| Bigart | 27.795 | $200 | $    5,559.00 |
| Thomas | 11.475 | $200 | $    2,295.00 |
| Kawel | 88.910 | $180 | $  16,003.80 |
| SUBTOTAL | 195.500 | | $  48,497.60 |

| Law Firms Subtotals | Reasonable Hours | Reasonable Fees |
| --- | --- | --- |
| Jones Walker | 1,409.81 | $392,099.08 |
| Venable | 195.50 | $  48,497.60 |
| TOTAL | 1,605.310 | $440,596.68 |

Accordingly, the recommended lodestar amount of reasonable attorney's fees in this case is $440,596.68.

8.     No Lodestar Enhancement Is Warranted

Plaintiffs concede that there is a "strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." Kenny A., 130 S. Ct. at 1669.  Plaintiffs argue that this matter, with its national significance, high stakes, extreme time constraints and labor intensity, is one of those "exceptional cases" in which any adjustment to the lodestar should be upward.  Watkins, 7 F.3d at 457.

After eliminating the factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain for an adjustment analysis:  the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client and awards in similar cases.  The customary fee and awards in similar cases have already been evaluated in establishing a reasonable hourly rate.  Plaintiffs state that Jones Walker has had an attorney-client relationship with Hornbeck for decades and that Jones Walker's representation of the other 38 plaintiffs added to the reasonableness and efficiencies achieved in handling this case to serve all plaintiffs' common interests.  Plaintiffs also contend that the case was somewhat undesirable because, before and after they filed it, the Deepwater Horizon well remained out of control, spilling huge amounts

51

of polluting oil into the Gulf of Mexico.  Plaintiffs argue that, when they filed the case, they did not know whether this first legal challenge to the government's moratorium "would be viewed as heroic, or instead nefarious."  Plaintiffs' memorandum in support, Record Doc. No. 233-1 at p. 16.  Giberga, Hornbeck's General Counsel, declares that, before deciding to retain Jones Walker for this matter, he "conferred with and considered other firms . . . that were either unwilling or unable to accept the case or which I concluded had conflicts of interest that would prevent their handling of the matter." Record Doc. No. 233-5 at p. 2.

I find these factors insufficient to warrant any upward adjustment in the lodestar amount, which adequately compensates plaintiffs for tasks performed during and related to the time period of defendants' contempt. The case was neither particularly desirable nor peculiarly undesirable. It was certainly desirable in that it presented interesting professional and intellectual challenge for which counsel apparently are being well-paid by fine clientele. The fact that some among the general public may have disagreed with plaintiffs' litigation goals, while others, certainly many in this community, supported them, simply makes the case similar to numerous other high profile lawsuits, nothing so special as to warrant fee enhancement.

I find that the lodestar amount is reasonable in this case and that no further reduction or enhancement is appropriate or required. I recommend that plaintiffs be awarded attorney's fees in the amount of $440,596.68.

E.   <u>Award of Costs</u>

Although Judge Feldman's contempt order plainly grants plaintiffs recovery of their attorney's fees, it does not specifically allow for costs. Nonetheless, both parties assume in their memoranda that the order includes costs. In addition, Judge Feldman's order indicates in several places that the contempt award is not limited to attorney's fees. For example, Judge Feldman states that plaintiffs' motion "centers on entitlement to compensation for the cost of the government's conduct" and refers to me the "issue of <u>quantum</u>," not limited expressly to attorney's fees.   Record Doc. No. 226 at pp. 4-5, 8 (emphasis added). I conclude that Judge Feldman intended to allow plaintiffs to recover costs in addition to attorney's fees associated with defendants' contempt.

However, defendants argue that plaintiffs' claimed costs are unsupported by adequate evidence, not linked in any way to defendants' contemptuous conduct, excessive and properly considered as overhead rather than recoverable costs. Defendants contend that plaintiffs should recover nothing in costs. Unfortunately, plaintiffs have provided <u>no evidence</u>, not even a statement that the costs were necessary, to justify the claimed costs, nor have they produced any evidence that their attorneys exercised billing

judgment by eliminating any costs.  All plaintiffs provide to the court is a list of all the costs billed to their clients.

When cost-seekers neglect to supply any verification that the costs claimed were "necessarily incurred in the case" and instead state only that the costs were expended "in the preparation and litigation of this case," the district court does not abuse its discretion by denying all costs except filing fees. Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 9 (1st Cir. 1993); accord Home Builders Ass'n v. City of Madison, 191 F.R.D. 515, 517, 518, 519 (N.D. Miss. 1999) (Wingate, J.) (citing Fogleman v. ARAMCO, 920 F.2d 278, 286 (5th Cir. 1991); Studiengesellschaft Kohle v. Eastman Kodak, 713 F.2d 128, 133 (5th Cir. 1983)).  On the other hand, the court "does have discretion to allow unverified costs where it is clear from the nature of the cost that it was necessarily incurred." Johnson v. Rhode Island, No. 98-266T, 2000 WL 303305, at *13 (D.R.I. Mar. 22, 2000) (quotation omitted) (citing Photosomphone, 984 F.2d at 9).  Generally, before taxing costs, the court must find that the costs were necessarily incurred in the litigation, and this finding must be based on "some proof of the necessity."  Holmes v. Cessna Aircraft Co., 11 F.3d 63, 64 (5th Cir. 1994) (citations omitted); accord Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1045 (5th Cir. 2010).

For the same reasons discussed above concerning plaintiffs' request for attorney's fees, all costs incurred before June 22, 2010, when the preliminary injunction was

imposed, and after September 29, 2010, when the injunction was declared "dead" (except costs related solely to plaintiffs' motion for attorney's fees), must be deducted because they are unrelated to defendants' contempt of that order.

In addition, I will deduct all of the charges for computerized research, postage, telephone calls, facsimile transmission and express delivery services. Federal courts generally consider these to be nontaxable overhead, not taxable costs.

As to computerized research, including charges for PACER access to pleadings filed in the case, the Fifth Circuit has not yet addressed this issue. Although a few district court cases in this circuit have awarded online research expenses as costs, "the overwhelming weight of authority in this and other circuits rejects this view." Honestech, Inc. v. Sonic Solutions, 725 F. Supp. 2d 573, 581-82 & n.3 (W.D. Tex. 2010) (citing cases); accord Ill. Cent. R. Co. v. Harried, No. 5:06cv160-DCB-JMR, 2011 WL 283925, at *6 (S.D. Miss. Jan. 25, 2011). Many district courts have ruled that the cost of computerized research is not recoverable. E.g., id.; Honestech, Inc., 725 F. Supp. 2d at 582; Kraft v. Arden, No. 07-48-PK, 2009 WL 73869, at *9 (D. Or. Jan. 8, 2009); Channell v. Eichelberger, No. 2:06CV197-SA, 2008 WL 4683419, at *3 (N.D. Miss. Oct. 22, 2008); Sigur v. Emerson Process Mgmt., No. 05-1323-A-M2, 2008 WL 1908590, at *9 & n.14 (M.D. La. Feb. 21, 2008) (Noland, M.J.) (citing cases), report & recommendation adopted, 2008 WL 1908588 (M.D. La. Apr. 30, 2008) (Parker, J.);

55

Tasakos v. Welliver Mental Prods. Corp., No. 04-6205-AA, 2005 WL 627633, at *2 (D.

Or. Mar. 16, 2005); Mr. & Mrs. S. v. Timberlane Reg'l Sch. Dist., No. 03-260, 2004 WL

502614, at *9 (D.N.H. Mar. 15, 2004).

As to postage, see Owens v. Howe, 365 F. Supp. 2d 942, 945 n.1 (N.D. Ind. 2005);

Hagan v. MRS Assocs., Inc., No. 99-3749, 2001 WL 531119, at *11 (E.D. La. May 15,

2001) (Africk, M.J.); Johnson, 2000 WL 303305, at *14; Embotelladora Agral

Regiomontana, S.A. de C.V. v. Sharp Capital, Inc., 952 F. Supp. 415, 417 (N.D. Tex.

1997); Altergott v. Modern Collection Techniques, Inc., 864 F. Supp. 778, 783 (N.D. Ill.

1994).

As to express or courier delivery charges, telephone expenses and telecopy

expenses, see Embotelladora, 952 F. Supp. at 417 (citing El-Fadl v. Central Bank, 63

F.R.D. 389, 390 (D.D.C. 1995); Cody v. Private Agencies Collaborating Together, Inc.,

911 F. Supp. 1, 6 (D.D.C. 1995); Thomas v. Treasury Mgmt. Ass'n, 158 F.R.D. 364, 372

(D. Md. 1994); Ezelle v. Bauer Corp., 154 F.R.D. 149, 155 (S.D. Miss. 1994); In re The

Glacier Bay, 746 F. Supp. 1379, 1394 (D. Alaska 1990); Hollenbeck v. Falstaff Brewing

Corp., 605 F. Supp. 421, 439 (E.D. Mo.), aff'd, 780 F.2d 20 (8th Cir. 1985)); see also

Migis, 135 F.3d at 1048 (court did not abuse its discretion in denying costs of couriers,

postage and copying).

Therefore, the allowable costs incurred between June 22 and September 29, 2010 consist solely of copying charges by the Jones Walker firm and the cost of stenographic transcripts of two hearings in this court.  Again, however, plaintiffs have provided no evidence concerning the cost per page that Jones Walker charged for copies, so that the court cannot determine if the rate is reasonable.  Denner v. Tex. Dep't of Crim. Justice, No. SA-05-CA-184-XR, 2007 WL 294191, at *7 (W.D. Tex. Jan. 29, 2007).

> Without more information, it is impossible for the Court to determine whether the printing costs claimed were actually necessary to the prosecution of this case . . . . Although prevailing parties do not have to justify every single photocopying cost, they do have to provide enough information for the Court . . . to make a reasonable determination of necessity.

Honestech, Inc., 725 F. Supp. 2d at 584 (citation omitted).  Nor have plaintiffs provided any evidence that the transcripts were necessarily obtained for use in the case.

Accordingly, I recommend reducing all allowable costs by 75% to account for lack of evidence of the necessity and reasonableness of the costs and lack of evidence of billing judgment.  After taking these deductions, I recommend an award of reimbursable costs in the amount of $444.33.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiffs' Motion to Set Amount of Attorney's Fees and Costs, Record Doc. No. 233, be GRANTED IN PART

57

AND DENIED IN PART and that plaintiffs recover $440,596.68 in reasonable attorney's fees and $444.33 for costs.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[10]

New Orleans, Louisiana, this ___1st___ day of June, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

58